SUPPLY MANUFACTURING CO., Inc.,
Plaintiff,

v.

KING TRIMMINGS, INC. and Louis J. Schneider Doing Business as Schneider International Co., Defendants.

United States District Court
S. D. New York.
May 10, 1963.

James & Franklin, New York City, for plaintiff; Harold James, New York City, of counsel.

Kupferman & Price, New York City, for defendants; Theodore Kupferman, New York City, of counsel.

McLEAN, District Judge.

This is an action for trade mark infringement and unfair competition. Plaintiff has moved for summary judgment against both defendants. Plaintiff seeks an order granting a permanent injunction and referring the action to a Master to ascertain the amount of damages. In their brief defendants have asked for summary judgment dismissing the complaint. They have made no formal motion for that relief.

The material facts are undisputed. Plaintiff, a New York corporation, is engaged in the business of manufacturing strips of material to be used in the manufacture of belts, so-called belt backing. This material has been sold by plaintiff in interstate and foreign commerce under the name "BAC–A–BELT" since January 10, 1949. This name was registered as a trade mark on the principal register by the United States Patent Office on October 28, 1952 and given Registration Number 565,863. The Statement of Registration provided: "The word 'Belt' is disclaimed apart from the mark shown." On October 31, 1957, plaintiff filed an affidavit of continued use in regard to "BAC–A–BELT," and that affidavit was accepted by the Patent Office on November 4, 1957.

On August 8, 1956, plaintiff entered into an agreement with U. S. Testing Company, Inc., whereby the latter agreed to run tests on plaintiff's product, and, if the results of the tests were satisfactory, to allow plaintiff to use the name of the U. S. Testing Company and its certified merchandise seal in connection with the promotion of plaintiff's product. Plaintiff has applied this seal to its "BAC–A–BELT" product since August 8, 1956.

Plaintiff also subjects the material used in its "BAC–A–BELT" product to a purifying process under the supervision of Sanitized Sales Company of America, Inc. Because of this, plaintiff has been authorized to use the word "Sanitized" on its "BAC–A–BELT" product since March 23, 1960. An R in a circle appears above and to the right of the word "Sanitized" reflecting the fact that the word is a registered trade mark.

Plaintiff, on its belting material, displays its "BAC–A–BELT" trade mark with the word "This" above and the word "Backing" below the mark. It also applies to the backing material the legend "Wash or Clean as Garment." On the material, these markings are placed in the following order from left to right: trade mark, certification seal, legend and "Sanitized."

Plaintiff has sold over 20,000,000 yards of "BAC–A–BELT" material in each of the years 1959, 1960 and 1961. These sales were made principally to dress and belt manufacturers and to the general public. Plaintiff has expended over $20,-000 for advertising its "BAC–A–BELT" product in 1959 and over $30,000 in 1960 and 1961. This advertising was placed in both trade and consumer publications.

Beginning in September 1958, plaintiff sold its "BAC–A–BELT" product to defendant Louis Schneider, doing business in New York as Schneider International Co., for export to the Philippines. On August 31, 1960, plaintiff began to sell its product in New York to Insuco Industrial Supply Corp. who also exported "BAC–A–BELT" products to the Philippines. On July 24, 1961, plaintiff and Schneider ceased doing business because plaintiff refused to give or continue a special price discount which Schneider requested.

Thereafter Schneider began to do business with defendant King Trimmings, Inc., a New York manufacturer of belting. On Schneider's order and instructions, defendant King Trimmings manufactured belt backing material at its New York plant and imprinted on it various names, i. e., "BAC–BELT," "BAC–CA–BELT," "BAC–KA–BELT," "BAC–KING–BELT," and "BAC–QUEEN–BELT." Defendant King Trimmings also imprinted on its product the word "Satinized" and placed against this word an R in a circle symbol, although "Satinized" was not a registered trade mark. Defendant also imprinted on its material a representation of a seal exactly similar in shape and size to the seal of the U. S. Testing Company used on plaintiff's product. Defendant's seal used the words "Super Guaranteed Quality," instead of "Certified U. S. Testing Co., Inc." The arrangement of these marks and seals upon defendant's product was precisely similar to that of plaintiff's. The word "BAC–BELT" was placed between "This" and "Backing." The legend "Wash or Clean as Garment" was printed in the same position, with respect to the other marks, as it appeared on plaintiff's product.

Defendant King Trimmings sold this product to defendant Schneider and delivered it to Schneider's trucker at King Trimmings' plant in New York. Schneider subsequently shipped the goods to the Philippines to his customer there. Defendant King Trimmings also sold some of this material to another New York exporter, Pan American Affiliates, Inc. who apparently exported it to buyers in Nicaragua.

Both Schneider and Ulrich, vice president of King Trimmings, testified in their depositions to the fact that they knew of plaintiff's trade mark at the time when King Trimmings manufactured and sold this product to Schneider.

In late 1961 and early 1962, plaintiff received complaints from its Philippine and Nicaragua representatives to the effect that "BAC–A–BELT" products were on sale in those countries at reduced prices. Upon investigation plaintiff discovered that the offending products were those manufactured by King Trimmings.

Thereupon plaintiff filed the original complaint in this action naming only King Trimmings as a defendant. On

April 3, 1962, King Trimmings consented to a preliminary injunction restraining it from utilizing the term "BAC–BELT" or "any other term confusingly similar to plaintiff's registered trademark BAC–A–BELT," from using "Satinized," from using the "Super Guaranteed Quality" seal, and "from otherwise marking its products in a manner confusingly similar in appearance to the markings on plaintiff's belting material."

On June 28, 1962, plaintiff filed an amended complaint joining Schneider as a co-defendant.

Plaintiff claims that subsequent to the entry of the preliminary injunction, King Trimmings has continued to sell its belt backing bearing the mark "BAC–KING–BELT" and "BAC–QUEEN–BELT," although without the imitation of the seal of U. S. Testing Co., Inc. and without the word "Satinized." Defendants do not deny that King Trimmings has done this, but they assert that they are entitled to do so because "BAC–KING–BELT" and "BAC–QUEEN–BELT" are derived from the corporate name of defendant King Trimmings.

Defendants' principal contentions in opposition to the present motion are (1) plaintiff's trade mark "BAC–A–BELT" is not a valid trade mark, as it is purely descriptive of the product, i. e., belt backing; (2) there has been no trade mark infringement in the United States, as the only sales of the offending product took place in the Philippines and Nicaragua where "BAC–A–BELT" was not a registered trade mark at the time of those sales.

■ In order to determine whether a trade mark is descriptive or not, the court considers the mark itself and the nature of the product to which it is affixed. Douglas Laboratories Corp. v. Copper Tan, 210 F.2d 453 (2d Cir. 1954); Travel Magazine, Inc. v. Travel Digest, Inc., 191 F.Supp. 830 (S.D.N.Y.1961).

■ Registration of a trade mark on the principal register is prima facie evidence of the validity of the mark. 15 U.S.C. § 1057(b).

Defendants have offered nothing to rebut that presumption beyond their mere assertion that the mark is descriptive.

■ It is immaterial that plaintiff was required to disclaim the word "belt" apart from the mark. Plaintiff could not use the word "belt" alone as a trade mark. But a trade mark may contain one or more descriptive words and yet be a valid trade mark, for its validity is determined by the meaning of the mark as a whole, not by the meaning of any of its parts. 1 Nims, Unfair Competition and Trade-Marks § 201.

■ Viewed as a whole, "BAC–A–BELT" is, in my opinion, a sufficiently fanciful mark for belt backing material to constitute a valid trade mark. It is as fanciful as "Coppertone" for suntan lotion or "Spice Islands" for spice products, each of which has been upheld. Douglas Laboratories Corp. v. Copper Tan, supra; Spice Islands Co. v. Spice Land Products, Inc., 262 F.2d 356 (2d Cir. 1959).

■ When the issue of infringement of a valid trade mark depends upon a comparison of plaintiff's mark with defendant's, a question of law is presented. J. R. Wood and Sons, Inc. v. Reese Jewelry Corporation, 278 F.2d 157 (2d Cir. 1960); Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 199 F.2d 602 (2d Cir. 1952).

■ The statutory test of infringement is whether defendants' mark was such a "colorable imitation" of plaintiff's mark that it was likely to cause confusion among purchasers. 15 U.S.C. § 1114(1).

■ It is clear beyond doubt, at least with respect to the marks used by defendants prior to the issuance of the preliminary injunction, that defendants' marks were flagrant and intentional imitations of plaintiff's mark and that they were likely to and did cause confusion among purchasers. Consequently, plain--

tiff's mark has been infringed. See Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 (2d Cir. 1956).

■ Equally without merit is defendants' second contention that, since the ultimate sales of the offending products were in the Philippines where plaintiff did not have a registered trade mark, defendants did not infringe plaintiff's mark in the United States. The depositions of defendants reveal that the following activities took place in New York:

1. Schneider's directions to King Trimmings to place the offending marks on the goods.

2. The actual application of the marks to the goods by King Trimmings.

3. The sale of the goods by King Trimmings to Schneider.

It is clear from the language of 15 U.S.C. § 1114 and from the cases construing that section and its predecessors that these activities are sufficient to give plaintiff a right to relief for infringement of its United States trade mark. Steele v. Bulova Watch Co., Inc., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252 (1952); George W. Luft Co., Inc. v. Zande Cosmetic Co., Inc., 142 F.2d 536 (2d Cir. 1944); Hecker H-O Co., Inc. v. Holland Food Corp., 36 F.2d 767 (2d Cir. 1929).

Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633 (2d Cir. 1956), cited by defendants, is not in point. In that case, it was held that 15 U.S.C. § 1114 did not give an American plaintiff rights against a foreign national for acts committed in the foreign country under a presumably valid trade mark registration in that country. Here defendants are American citizens, the infringing acts were committed in New York, and defendants have no registered trade mark in the Philippines.

■ Plaintiff is therefore entitled to a permanent injunction restraining defendants from utilizing any mark which is confusingly similar to plaintiff's registered trade mark "BAC–A–BELT." The injunction should prohibit the use of such an infringing mark by defendant King Trimmings in the sale of its products not only to defendant Schneider but to any other customer.

As to "BAC–KING–BELT" and "BAC–QUEEN–BELT," I am not impressed with defendants' contention that these marks are innocent and justifiable uses of marks derived from the corporate name of defendant King Trimmings. It seems more than a coincidence that the word "King" when used with "BAC" becomes in effect "Backing." Defendants' use of this mark on belt backing material seems to me to be a transparent attempt to circumvent the injunction against the use of "BAC–BELT" or any similar name.

"BAC–QUEEN–BELT" of course does not derive from defendants' corporate name but may be said to be the antithesis of it. This is the least similar to plaintiff's of all of defendants' marks. If there were nothing more to this case than the use of this particular name alone, a different situation might be presented. In the light of the entire history of defendants' activities, however, as revealed by this record, I believe that this mark also is a subterfuge and may also cause confusion among purchasers. Consequently, the injunction should be broad enough to prohibit the use of "BAC–KING–BELT" and "BAC–QUEEN–BELT" as well as all of defendants' other imitations. See Eskay Drugs v. Smith, Kline & French Laboratories, 188 F.2d 430 (5th Cir. 1951).

Plaintiff's motion for a permanent injunction is granted.

I do not believe that the issue of damages here is likely to be of sufficient complexity to require a reference to a Special Master. The order should accordingly provide that the case be placed on the trial calendar for trial by the court on the issue of damages pursuant to Rule 56(c).

Assuming, without deciding, that as a matter of procedure, defendants may request summary judgment in their favor without making a formal motion for that relief, it is obvious from what has been

said heretofore that defendants are not entitled to summary judgment dismissing the complaint. Accordingly, their request is denied.

Settle order on notice.