**MISS UNIVERSE, INC., Plaintiff,**

v.

**Alfred PATRICELLI, Defendant.**
**Civ. No. 11996.**

United States District Court
D. Connecticut.
June 27, 1967.

Affirmed by Court of Appeals
August 9, 1967.\*

"The order of Chief Judge Timbers is affirmed. However, the merits of the controversy, including the validity of plaintiff's service marks, must await the trial. This decision is not intended to foreclose the defendant from using a title descriptive of his contest to select a representative from the United States of America for the World Beauty Pageant in London, England, such as Miss World—USA."

Lawrence W. Iannotti, of Gumbart, Corbin, Tyler & Cooper, New Haven, Conn., Fred A. Freund, of Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff.

Anthony P. Copertino, Jr., Bridgeport, Conn., Henry West Leeds, of Mason, Fenwick & Lawrence, Washington, D. C., for defendant.

TIMBERS, Chief Judge.

### QUESTIONS PRESENTED

In this action for injunctive relief and an accounting in connection with alleged infringement of plaintiff's registered service marks "MISS U.S.A." and "MISS UNITED STATES OF AMERICA",

plaintiff has moved for a preliminary injunction to restrain defendant from using the titles "MISS U.S.A.—WORLD", "MISS U.S.A. WORLD PAGEANT", and "MISS U.S.A.—WORLD BEAUTY PAGEANT", or other similar titles infringing plaintiff's registered marks or constituting unfair competition with plaintiff, pending final determination of the issues at trial.

The essential questions presented by the instant motion are whether it is reasonably probable that plaintiff will prevail at the trial with respect to its contentions that defendant has infringed its service marks and has been engaged in unfair competition, and whether denial of a preliminary injunction would cause plaintiff irreparable injury.

Having held a full hearing on June 12 and 14, 1967, and having considered fully all the evidence there presented, together with the affidavits, briefs and other papers submitted on behalf of the respective parties, the Court is of the opinion that a preliminary injunction should issue. The following constitute the Court's finding of fact and conclusions of law, pursuant to Rule 52, Fed. R.Civ.P.

### FINDINGS OF FACT

1. The plaintiff is a California corporation, having its principal office and place of business at 509 Madison Avenue, New York, New York. The defendant is a Connecticut citizen, having a place of business at 38 Fairfield Avenue, Bridgeport, Connecticut.

2. The matter in controversy exceeds, exclusive of interest and costs, the sum of Ten Thousand Dollars ($10,000).

3. An order to show cause, dated June 5, 1967, was served upon the defendant, together with the verified complaint, affidavits, and other papers on file in this cause, on June 7, 1967; proof of service has been properly returned to this Court.

4. The plaintiff for many years has been engaged in conducting national and regional beauty contests for promotional purposes. These contests result in the annual selection of a national contest winner known as "MISS U.S.A.", who also has been commonly referred to as "MISS UNITED STATES OF AMERICA" or "MISS UNITED STATES."

5. The plaintiff is registered owner of the service marks "MISS U.S.A." and "MISS UNITED STATES OF AMERICA," for promoting the sale of goods and services of others through the medium of a beauty contest conducted on a national and regional basis, which service marks bear Registration Numbers 808,974 and 808,975, respectively, dated May 24, 1966, in the United States Patent Office. The plaintiff has been using these marks in commerce continuously since 1952. They are well and favorably known to the public, business and industry, identifying and distinguishing the source and origin of plaintiff's services. They have become valuable symbols of plaintiff's good will.

6. The defendant has been using, and continues to use, over the plaintiff's objections, the expressions "MISS U.S.A.—WORLD BEAUTY PAGEANT", "MISS U.S.A.", "MISS UNITED STATES", "MISS U.S.A.—WORLD", and variants thereof, in connection with beauty contests and the promotion of the sale of goods and services in all respects similar to those of the plaintiff.

7. The defendant formerly was a franchisee of the plaintiff for the New England States in connection with the plaintiff's business. Since the termination of this relationship, the defendant progressively has encroached upon the service marks of the plaintiff.

8. There is the threat of imminent expansion of the use of said expressions by the defendant in connection with the first national telecast of the defendant's beauty contest and related publicity and other promotional activities.

9. The use by the defendant of the expression "MISS U.S.A.—WORLD BEAUTY PAGEANT" and other similar expressions is likely to cause confusion, mistake and deception. Confusion has already occurred.

10. Unless the defendant is restrained from using "MISS U.S.A.", "MISS

UNITED STATES OF AMERICA", "MISS UNITED STATES", "MISS U.S.A.—WORLD BEAUTY PAGEANT", "MISS U.S.A.—WORLD", or variants thereof in any form, the plaintiff will suffer irreparable harm in that the likelihood of confusion will imperil the plaintiff's business.

11. The use of titles identical with or confusingly similar to the plaintiff's service marks for the beauty contests or related promotional services of another will cause irreparable harm to the plaintiff and the absence of any such confusingly similar designation is essential to the conduct of the plaintiff's promotional services.

12. The damage which might be suffered by the defendant as the result of restraining the use by him of said titles is insignificant in comparison with the damage which would be suffered by the plaintiff should an injunction not issue at this time.

On the basis of the foregoing, the Court makes the following

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter of this action under Section 39 of the Trademark Act of July 5, 1946 (15 U.S.C. § 1121) and Sections 1338 and 1391 of the Judicial Code (28 U.S.C. §§ 1338 and 1391). In addition, there is diversity of citizenship between the plaintiff and the defendant and the Court has jurisdiction under Section 1332 of the Judicial Code (28 U.S.C. § 1332).

2. The plaintiff's service marks, "MISS U.S.A." and "MISS UNITED STATES OF AMERICA", registered in the United States Patent Office, which service marks bear Registration Numbers 808,974 and 808,975, are valid and subsisting.

3. The aforesaid acts and conduct of the defendant constitute infringement of the plaintiff's registered service marks and unfair competition with the plaintiff.

4. The planitiff has no adequate remedy at law and is entitled to a preliminary injunction.

## OPINION

In order to be entitled to the temporary relief afforded by the grant of a preliminary injunction pending ultimate determination at trial of the issues of service mark infringement and unfair competition, plaintiff must show that it is reasonably probable that it will prevail at trial and that denial of a preliminary injunction would cause it irreparable injury.[1] Plaintiff has made the necessary showing, and is therefore entitled to the relief requested.

I. *Reasonable Probability of Plaintiff's Success at Trial*

In weighing the likelihood of plaintiff's success at the trial, it is necessary to assess the probabilities that plaintiff's service marks are valid and worthy of protection, and that defendant is infringing those marks.[2]

Plaintiff's service marks, as registered, are entitled to the full range of statutory protection granted trade marks.[3] The mere fact of registration of such marks creates a strong presumption of validity[4], a presumption which in this case stands unrebutted by any of the evidence presented on behalf of defendant. In this connection, it is true that a mark which is simply descriptive of a type of product is entitled to no protection against infringement unless

---

1. See W. E. Bassett Company v. Revlon, Inc., 354 F.2d 868, 871, 872 (2 Cir. 1966).

2. See W. E. Bassett Company v. Revlon, Inc., supra note 1, at 871; see also Triumph Hosiery Mills, Inc. v. Triumph International Corp., 308 F.2d 196 (2 Cir. 1962).

3. See 15 U.S.C. § 1053.

4. See 15 U.S.C. § 1057(b); Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp., 259 F.2d 314, 316–317 (2 Cir. 1958); Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 542 (2 Cir. 1956).

it has acquired a "secondary meaning", unless, that is, the term primarily serves to identify plaintiff rather than its product to that part of the public interested in contracting with plaintiff for sales promotions under the aegis of the current "MISS U.S.A." title-holder.[5] The record here reveals long and extensive use of the registered marks by plaintiff, together with substantial advertising and ever-increasing publicity, leading to nationwide and extremely valuable identification of such marks with plaintiff's promotional services. If such marks are to be deemed merely descriptive, then there is an ample showing of secondary meaning worthy of protection. On the other hand, the marks here at issue would seem at least as "arbitrary" and "fanciful" as others held not merely descriptive.[6] Where contentions having equal force can be made that a mark is fanciful, or purely descriptive, it would be inappropriate for this Court to overrule the judgment of the Patent Office in granting registration.[7]

Plaintiff's registered marks are entitled to protection against infringement. The question of infringement turns upon whether defendant used such a colorable imitation of those marks as to make public confusion likely.[8] The evidence is quite clear that defendant, a former area franchise holder of plaintiff, was steadily engaged in the build-up of a parallel contest structure, recently and increasingly competitive with plaintiff in the marketing of promotional services; through carelessness or design, defendant's advertising became more and more focused upon the words "MISS U.S.A." as the prime identifying symbol of his organization, over the protests of plaintiff. Defendant's practices have in fact caused that confusion, mistake and deception against which it is the purpose of the trademark laws to protect the public.[9] Defendant therefore infringed plaintiff's service marks, subsequent to their registration on May 24, 1966.

Plaintiff is also entitled to the protection of this Court with respect to such of defendant's misleading practices as occurred prior to the above date, for this Court has pendent jurisdiction over the substantial and related claim of unfair competition under the law of the State of Connecticut.[10] No issues not already considered are raised in this regard, for there is no real difference between the relevant state and federal law [11], so that there is also a reasonable probability that plaintiff will succeed at trial on its claim of unfair competition with respect to defendant's use of titles confusingly similar to "MISS U.S.A." prior to May 24, 1966.

---

5. See 15 U.S.C. § 1052(e); W. E. Bassett Company v. Revlon, Inc., supra note 1, at 871; Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 498–499 (2 Cir. 1962).

6. See, e. g., Spice Islands Co. v. Spice Land Products, Inc., 262 F.2d 356 (2 Cir. 1959); Douglas Laboratories Corp. v. Copper Tan, 210 F.2d 453 (2 Cir. 1954); Supply Manufacturing Co. v. King Trimmings, Inc., 220 F.Supp. 947, 950 (S.D. N.Y.1963).

7. See Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp., supra note 4, at 316.

8. See 15 U.S.C. § 1114(1).

9. See W. E. Bassett Company v. Revlon, Inc., supra note 1, at 871.

10. See 28 U.S.C. § 1338(b); Flexitized, Inc. v. National Flexitized Corporation, 335 F.2d 774, 780–781 (2 Cir. 1964).

11. See General Controls Co. v. Hi-G, Inc., 212 F.Supp. 152, 160 (D.Conn.1962). The Connecticut test for unfair competition is whether as a matter of fact the name used by defendant
"is such as to cause confusion in the public mind as between the plaintiff's business and that of the defendant, resulting in injury to the plaintiff." Middletown Trust Co. v. Middletown National Bank, 110 Conn. 13, 20, 147 A. 22, 25 (1929); see also Yale University v. Benneson, 147 Conn. 254, 255–256, 159 A.2d 169, 170–171 (1960).

## II. *Irreparable Injury to Plaintiff if Preliminary Injunction Denied*

As previously mentioned, confusion has already been caused by defendant's use of contest titles bearing striking similarities to those registered by plaintiff as service marks. The value of such marks has been created by plaintiff's efforts. Continuing value must obviously depend on exclusivity of use. It is clear that plaintiff's past investment and present and future profits would be nullified by the unchecked growth of a rival bearing a virtually identical name.

Defendant has made arrangements for a "MISS U.S.A.—WORLD" pageant in Baltimore, Maryland, scheduled to take place on August 19, 1967. For the first time, national television coverage will be accorded defendant's competitive activities. This single event would inevitably effect a major confusion in the mind of the public, and would immeasurably weaken the value of plaintiff's marks. As to this last, not only would a practically indistinguishable national rival spring into being pending the outcome of the trial, but even if plaintiff were ultimately granted permanent injunctive relief, the basic value found in plaintiff's claim to exclusive use would be significantly diminished.

By contrast, defendant has adduced no evidence to show any major loss resulting to it from a grant of the preliminary injunction. The instant motion does not seek to restrain defendant from carrying on its contest, but merely to enjoin the use of titles in connection with such contest as would irreparably compound on a national scale the existing confusion. Defendant has not shown that any of his purported contract rights depend on the continuing use of titles embodying the name "MISS U.S.A." In balance, therefore, the equities lie with plaintiff on this issue of immediate and irreparable injury.

Defendant has contended that plaintiff is barred from seeking relief because of its alleged delay and acquiescence in defendant's activities. But the doctrine of laches is inapposite in this case where the evidence makes plain a history of slow encroachment upon plaintiff's preserve, of increasingly direct competition, and of sudden promotional expansion aimed at exploitation of a market created by plaintiff.[12]

Accordingly, the instant motion for a preliminary injunction is granted.

### ORDER

ORDERED that defendant, his agents, servants, employees and attorneys and all persons in active concert and participation with him be and they hereby are restrained, pending final determination of this action, from

(a) using "MISS U.S.A.", "MISS UNITED STATES", "MISS U.S. A.—WORLD", "MISS U.S.A. WORLD PAGEANT", "MISS U. S.A.—WORLD BEAUTY PAGEANT", or any other word or words confusingly similar to plaintiff's service marks "MISS U.S.A." and/or "MISS UNITED STATES OF AMERICA", either alone or in combination with any other words or terms, in connection with beauty contests or pageants, or advertising or promotional services related thereto, or in any manner whatsoever to refer to an event or service not conducted or performed by plaintiff or under its authority; and from

(b) committing any other acts calculated or likely to lead persons to the mistaken belief that any event conducted by or service offered or performed by defendant emanates from plaintiff, or is sponsored, approved or supervised by plaintiff, or connected or associated

12. See *Menendez v. Holt*, 128 U.S. 514, 523 (1888); cf. *Polaroid Corporation v. Polarad Electronics Corp.*, 287 F.2d 492, 497–498 (2 Cir. 1961), cert. denied, 368 U.S. 820 (1961).

with plaintiff in any way; and from

(c) otherwise competing unfairly with plaintiff in any manner;

Provided that plaintiff shall first give security in the amount of $35,000 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been improperly enjoined, such bond to be approved as to form and substance by the Court; and it is further

ORDERED that the premium for said bond shall be an item of taxable costs, in accordance with Rule 14 of the Rules of Civil Procedure of this Court.