### DOUGLAS LABORATORIES CORP. v. COPPER TAN, Inc.

United States District Court
S. D. New York.
Nov. 26, 1952.

Leslie D. Taggart, New York City, Raymond A. Ledogar and Samuel S. Cross, Jr., New York City, of counsel, for plaintiff.

Louis Scadron, New York City, and John S. Finn, New York City, of counsel, for defendant.

EDELSTEIN, District Judge.

This is an action for trade-mark infringement and unfair competition. The complaint alleges imitation of plaintiff's trade-mark "Coppertone" for sun tan lotions and creams by defendant's use of "Copper Tan" on similar products, and asks a permanent injunction against the use of the designation "Copper Tan" by the defendant and against the performance of enumerated acts of unfair competition by the defendant. The defendant counterclaims for a declaration that the plaintiff has no trade-mark rights in the designation "Coppertone", and that the designation is descriptive and incapable of functioning as a trade-mark. The case was tried to the court without a jury.

### Findings of Fact.

1. Plaintiff is a corporation organized and existing under the laws of the State of Florida and has its principal place of business in Miami, Florida.

2. Defendant is a corporation organized and existing under the laws of the State of New York, and has its principal place of business in New York, New York.

3. The amount in controversy, exclusive of interest and costs, exceeds $3,000.

4. Plaintiff's predecessors are Benjamin Green, doing business as Douglas Laboratories, and Douglas Laboratories, Inc., a Florida corporation.

5. Defendant's predecessors are a partnership of four persons, formed on May 29, 1946 as the Copper Tan Mfg. Co., and a corporation organized by the same four persons and incorporated on June 14, 1946.

6. The products of plaintiff and defendant are sun tan products.

7. The designation "Coppertone" describes the effect, functions and result of the use of the product manufactured by the plaintiff.

8. Benjamin Green, doing business as Douglas Laboratories, in Miami, Florida, adopted and began to use "Coppertone" on a sun tan product in November of 1944. Plaintiff and its predecessors continuously used "Coppertone" on their sun tan products, and by June of 1946, the designation was understood by the purchasing public in Florida and New York markets to identify a product whose origin had a single source.

9. If there were any sales of "Copper Tan" products prior to June of 1946, those sales were in very small quantities, to very few stores, and were made casually, sporadically and intermittently. Defendant began to make substantial and sustained efforts to market "Copper Tan" in June of 1946.

10. In June of 1946, the purchasing public in the Florida and New York markets did not understand the name "Copper Tan" to identify a product originating from a single source.

11. In June of 1946, defendant made an announcement to the trade which was false and which had as its purpose the confusion of the public so that defendant could sell its products on the strength of plaintiff's good will.

12. Prior to the commencement of this action, defendant slandered "Coppertone" and attempted to coerce plaintiff's custom-

ers from selling it, maliciously threatened plaintiff's customers with lawsuits, and attempted to pass off its product for that of the plaintiff.

13. However, these acts did not extend beyond a time approximately a year prior to the commencement of this suit, and between 1946 and 1952 no consistent continued course of conduct was indulged in by the defendant as a result of which plaintiff suffered continuing injury.

14. The defendant at the time of trial possessed no intent to compete unfairly, on the reputation and good will of the plaintiff.

15. The mark of the plaintiff at the time of trial was a picture of an Indian above which appeared the words "Don't be a paleface" and below which appeared the word "Coppertone".

16. The packaging of defendant's product in color, lettering and outward appearance is not similar to that of plaintiff's product.

17. Defendant, ever since its inception, has used and continues to use on its cartons the notation:

The Original
COPPER TAN
New York        Miami,

and on its labels the notation:

COPPER TAN, INC.
New York        Miami.

At no time has defendant had a place of business in Miami or outside the City of New York, and it is "Coppertone" which originally achieved success in Miami.

18. The use of the notation "The Original" and the address "Miami" on "Copper Tan" products is likely to cause confusion or mistake or the deception of purchasers.

19. Without such notation and address, "Copper Tan" products would be adequately distinguished from plaintiff's products so as to prevent the confusion or deception of the purchasing public.

20. The defendant applied for registration of the trade-mark "Copper Tan" in the Patent Office, and registration No. 503,807 was granted on the Supplemental Register under the Act of 1946.

### Discussion.

Much of plaintiff's evidence during the trial was devoted to an effort to prove that "Coppertone" had been established as a common law trade-mark. But the problem which immediately presents itself is whether the compound word is merely descriptive of the qualities, characteristics and functions of the sun tan preparation to which it applies. Such a word is not capable of exclusive appropriation as a trade-mark. 15 U.S.C. § 1052, 15 U.S.C.A. § 1052; Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536; see Nims, Unfair Competition and Trade-Marks, 4th Ed., vol. 1, §§ 200, 201. The plaintiff, of course, urges that the term is, at most, suggestive, and that it is necessary for a consumer to engage in "conscious exercise of the perceptive faculties" relate the word to the sun tan product. To draw the line between a highly suggestive and a merely descriptive mark is a very difficult task and admits of difference of opinion. But after a careful and prolonged consideration, I am inevitably constrained to the conclusion that the term is merely descriptive of the function or effect of the product, namely, to produce a sun tan of a copper color when used on the skin during exposure to the sun. The words "copper tone", it seems to me, adequately and simply describe a color, and compounding the words does not lend them sufficient mystery to vitiate the description. There is evidence, indeed, that a long and widely used color hair shampoo uses the word "coppertone" to describe the color of one particular shampoo item. Even using "tone" in the verb rather than in the noun sense, produces scant distinction when applying the word to a sun tan preparation. The function of imparting to the sun-exposed epidermis a particular hue is described.

The fact that, as plaintiff contends, the desirable color which the use of the product is intended to effect is tan, a shade of brown, with copper, a shade of red, being

an undesirable and unintended chromatic result, does not alter the conclusion. In the first place, even though the word be inaccurately descriptive, it is none the less descriptive. See Nims, § 201. And secondly, the word is descriptive though it ascribes to the product an attribute which it does not have but might have. Restatement of Torts, § 721, comment b. Plaintiff's labels provide evidence that the preparation not only might have such an attribute, but also that this attribute is desirable and intended. For the labels display the profile of an Indian, the classic red man, over whose head is the legend, "Don't be a paleface", and underneath which appears the word "Coppertone". Further, there is testimony by a representative of another manufacturer of a sun tan product that it had used the words "For a copper colored tan" on its labels. This obviously descriptive usage is, to my mind, hardly more descriptive than the compound word "Coppertone" alone, employed in connection with a sun tan preparation. Under the test suggested by Nims, supra, § 200, that a mark is not valid if the user may, by prohibiting its use in connection with a competitor's goods in the same market, thereby deprive competitors of the right to describe their goods by the normal use of the words involved, I feel that "Coppertone" is clearly invalid as a trade-mark. Plaintiff's first cause of action for trade-mark infringement must fail.

But although the plaintiff has not established a common law trade-mark in the term "Coppertone", it may nevertheless acquire the right to the protection of the term against unfair competition "if, through usage, the term has acquired a secondary meaning, that it has come to indicate that the goods in connection with which it is used come from a single source, manufacturer or producer. If one can show that his mark is endowed with this quality, that the public identifies his mark with the goods manufactured by him, then he is entitled to protection in its use. The crux of a secondary meaning is the origin of the goods from a single source. As stated by Judge L. Hand, in Bayer Co. v.

United Drug Co., D.C., 272 F. 505, 509, the public must understand by the term 'That it came from the same single, though, * * * anonymous, source from which they had got it before.'" National Nu Grape Co. v. Guest, 10 Cir., 164 F.2d 874, 877. Plaintiff's second cause of action is one for unfair competition, and since a common law trade-mark has not been established, it must be determined whether the proof adduced establishes a secondary meaning in the name.

The plaintiff's business in "Coppertone" was originated in humble circumstances in Florida in November, 1944. But it enjoyed rapid success, particularly in Florida and New York. The record of "Coppertone" sales and advertising, and the testimony of witnesses who merchandised sun tan products is sufficient to convince me that by June of 1946, when defendant made its first substantial effort to market "Copper Tan", the public was quite familiar with "Coppertone" and had established a great demand for it, to such an extent as to endow the product's name with a secondary significance in the Florida and New York markets. Indeed, there is ample evidence that at that time, when the defendant was incorporated, the officers of that corporation were well aware of the "Coppertone" reputation and fully intended to capitalize on it for their own profit. An announcement was inserted in a trade journal that the production of "Copper Tan", a product which had had considerable success in California and Florida, was being "stepped up" in New York. But it appears that "Copper Tan" was not then in production at all, and that the Florida product which had had considerable success was "Coppertone". A number of other acts, attributable to the defendant, also contribute to the conclusion that not only did Coppertone have a considerable reputation, but that the officers of the defendant were intimately aware of the fact. I have found also, that despite some evidence of previous use of the name, "Copper Tan" did not have a secondary meaning in the Florida and New York markets in June of 1946, when the unfair competition is alleged to have commenced.

■ Having established a secondary meaning in the name "Coppertone", the plaintiff is entitled to protection against another's reaping the benefit of that name and good will. " * * * the imitator of another's goods must sell them as his own production. He cannot lawfully palm them off on the public as the goods of his competitor. The manufacturer or vendor is entitled to the reputation which his goods have acquired and the public to the means of distinguishing between them and other goods; and protection is accorded against unfair dealing whether there be a technical trade-mark or not. The wrong is in the sale of the goods of one manufacturer or vendor as those of another. Elgin National Watch Co. v. Illinois Watch-Case Co., 179 U.S. 665, 674, 21 S.Ct. 270, 45 L.Ed. 365." Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 531, 44 S.Ct. 615, 618, 68 L. Ed. 1161. There is no question in my mind that, prior to the institution of this suit, the defendant deliberately attempted to palm off its "Copper Tan" for plaintiff's "Coppertone". It slandered "Coppertone" and attempted to coerce plaintiff's customers; it maliciously threatened plaintiff's customers with lawsuits; and it made false representations with respect to its product, in an attempt to identify it with plaintiff's product. But, reprehensible as this conduct was, I feel that no continuous course of such conduct has been established, extending until the filing of the complaint or until the date of trial. It appears, in fact, that such conduct was discontinued almost a year prior to the bringing of this action. The acts of unfair competition which were satisfactorily proved were performed on the initiative of one no longer in active association with the present management and conduct of the business, and I further affirmatively find that no intent to compete unfairly is attributable to those presently engaged in actively promoting "Copper Tan". Consequently, since I find that, according to the facts existing at the time the suit was commenced, as well as at the time of trial, there is no likelihood of a repetition of these deliberately unfair tactics, I see no point in enjoining them. Andrew Jergens Co. v. Bonded Products

Corporation, D.C., 13 F.2d 417, affirmed, 2 Cir., 21 F.2d 419. " 'Equity acts in the present tense', and molds its 'decree to actualities not history.' Continental Securities Co. v. Interborough Rapid Transit Co., D.C.N.Y., 207 F. 467, 471, affirmed, 2 Cir., 221 F. 44; 32 C.J. 76, § 63. * * * If the menace exists an injunction should be granted; if not, it should be denied. Goshen Mfg. Co. v. [Hubert A.] Myers Mfg. Co., 242 U.S. 202, 207, 37 S.Ct. 105, 61 L.Ed. 248; Warner & Co. v. [Eli] Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161." Champion Spark Plug Co. v. Reich, 8 Cir., 121 F.2d 769, 772.

■ Turning attention to the facts as they have existed since the commencement of this suit, I must, in determining the existence of unfair competition, apply the test of whether the public is likely to be deceived into buying "Copper Tan" when it means to buy "Coppertone", in the relevant markets. Best & Co. v. Miller, 2 Cir., 167 F.2d 374; Speed Products Co. v. Tinnerman Products, 2 Cir., 179 F.2d 778. "A defendant's good faith in believing that he has so marked his goods as to distinguish them from the plaintiff's will not protect him if the court finds that confusion has resulted, or is likely to result." Best & Co. v. Miller, supra, 167 F. 2d at page 377. Because of the near identity of the names, some amount of confusion is inevitable on that score alone. But without more, to preclude the defendant from using its confusingly similar name would be to give the name "Coppertone" the "full effect of a trademark, while denying its validity as such." Standard Paint Co. v. Trinidad Asphalt Co., supra, 220 U.S. at page 461, 31 S.Ct. at page 460. "The use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product." Warner & Co. v. Eli Lilly & Co., supra, 265 U.S. at page 528, 44 S.Ct. at page 616. "It is settled, beyond all controversy, that a manufacturer has no right to the exclusive use of a descriptive word in connection with his goods, and if nevertheless he adopts such a trademark, he

himself is largely to blame for the confusion which ensues when other manufacturers, with equal right, adopt similar terms to describe their products." Bliss, Fabyan & Co. v. Aileen Mills, Inc., 4 Cir., 25 F.2d 370, 372. Unfair competition, in these circumstances, consists not in the mere use of a similar mark, but in the unfair method of its use. Speed Products Co. v. Tinnerman Products, supra; National Nu Grape Co. v. Guest, supra; Shaler Co. v. Rite-Way Products, 6 Cir., 107 F.2d 82; Fawcett Publications v. Popular Mechanics Co., 3 Cir., 80 F.2d 194; Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 403, 40 A.L.R. 424; Charles Broadway Rouss, Inc., v. Winchester Co., 2 Cir., 300 F. 706. What may be enjoined therefore is not the mere use of the similar name, but an unfair manner of its use. There are cases, of course, "in which a trade name which was originally merely descriptive of a product became so strongly identified in the public understanding with the source of the product that to permit a competitor to use the name or its equivalent was virtually to license him to palm off his goods as those of another and thus to engage in unfair competition. See Coca-Cola Co. v. Koke Co. of America, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189, and Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 335, 336, 59 S.Ct. 191, 83 L.Ed. 195." Skinner Mfg. v. Kellogg Sales Co., 8 Cir., 143 F.2d 895, 899. But this case is not such a one. The plaintiff is not entitled to an injunction prohibiting the use of the name "Copper Tan", but merely to an injunction of an unfair usage of that name. The question which remains, therefore, is whether the defendant in using such a name has furnished an adequate means to identify its product and distinguish it from the plaintiff's product, and thus prevent deception to the purchasing public.

■ The plaintiff now merchandises its product in four forms: bottle, jar, tube and aerosol can. Defendant's product comes only in bottles and tubes. A casual glance discloses vast differences in appearance between plaintiff's and defendant's bottles, and the tubes bear no greater sim-ilarity to each other than they do to tubes of hordes of other drug products. The lettering and coloring of the "Copper Tan" tubes, and their cartons, is easily distinguishable from those of "Coppertone", and they lack the Indian profile symbol or design appearing on all "Coppertone" products. Not only are the bottles and tubes of the two products easily distinguishable, but the bottles and tubes of "Copper Tan" are not remotely to be confused with the jar or aerosol can of "Coppertone". There is, however, one particular which could, perhaps, occasion confusion. Defendant, ever since its inception, has used and continues to use on its cartons, above the name "Copper Tan", the notation "The Original", and below the name, the addresses "New York" and "Miami"; on its labels those addresses also appear, below the name. The defendant has no business address in Miami, although it has merchandised its product there. "Coppertone", however, was originated in Miami and is favorably known as a Florida product. Since "Copper Tan" is not the original Florida product, or a Florida product at all, I find that any attempt to make it appear that it is, in conjunction with the use of a name so similar to that of the original Florida product, would tend to the deception of the public, and must be discontinued in those markets where the name "Coppertone" is entitled to protection.

■ The defendant's mark "Copper Tan" has been registered on the Supplemental Register under the Act of 1946, Lanham Act, 15 U.S.C. §§ 1051–1127, 15 U.S.C.A. §§ 1051–1127, which is a continuance of register of marks registered under the Act of 1920. The plaintiff asks the court to cancel this registration, under the authority of § 1119. The pre-trial order placed the defendant's trade-mark registration in issue with respect to the counterclaim. And though the counterclaim has been largely, though not completely, withdrawn, the registration nevertheless has been placed in issue and remains in issue. Registration under the Act of 1920 is not barred because a mark is merely descriptive. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct.

191, 83 L.Ed. 195. But the existence of the registration of "Copper Tan" is a cloud on the rights which I hold the plaintiff has in "Coppertone", and the plaintiff is further damaged because the registration permits the defendant to employ on its product the statutory phrase, "Reg. U. S. Pat. Off." Consequently, the defendant's registration will be cancelled.

At the close of the plaintiff's case, the defendant moved for leave to plead the affirmative defense of laches, upon evidence that plaintiff became aware of the facts basic to his causes of action in 1946, but waited until 1948 to bring suit. But mere laches, even though established, would not be sufficient to preclude injunctive relief against the defendant. It would be sufficient to deny plaintiff an accounting, but plaintiff has waived an accounting. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Anheuser Busch v. DuBois Brewing Co., 3 Cir., 175 F.2d 370, 374. Consequently, the motion will be denied.

## Conclusions of Law.

1. This is an action for trade-mark infringement and unfair competition.

2. The court as jurisdiction by virtue of diversity of citizenship and amount in controversy.

3. Since "Coppertone" is merely descriptive of the effect, function and result of the use of the sun tan product manufactured by the plaintiff, it is not a valid common law trade-mark and cannot be exclusively appropriated by the plaintiff. Defendant, therefore, has not infringed the trade-mark "Coppertone".

4. By June of 1946, the plaintiff had established a secondary meaning in its mark "Coppertone" in the Florida and New York markets, and is entitled to the protection of the designation against unfair competition in those markets.

5. In June of 1946, the defendant's mark "Copper Tan" had no secondary meaning.

6. Defendant, prior to the institution of this suit, and commencing in June of 1946, competed unfairly with the plaintiff by performing the acts described in the 11th and 12th findings of fact.

7. At the time of the commencement of this suit, and at the time of the trial, defendant was competing unfairly with the plaintiff only by the use of the designation "The Original" and the address "Miami" in connection with its mark "Copper Tan".

8. The defendant has in no way imitated the features employed by the plaintiff in the appearance of container, box or outer wrapping of its product.

9. The plaintiff is not entitled to a permanent injunction enjoining the defendant from using "Copper Tan" in its business, either as a trade-mark or as part of its corporate name.

10. The plaintiff is not entitled to a permanent injunction enjoining acts of unfair competition by the defendant which have been found to have been discontinued prior to the commencement of this suit.

11. The plaintiff is entitled to a permanent injunction enjoining the defendant from using the notation "The Original" and the address "Miami" in connection with "Copper Tan", in the Florida and New York markets.

12. U. S. trade-mark registration No. 503,807, for "Copper Tan", is a cloud on the plaintiff's rights in "Coppertone", and the plaintiff is damaged by the registration which permits the defendant to employ on its product the statutory phrase, "Reg. U. S. Pat. Off."

13. U. S. trade-mark registration No. 503,807 is hereby ordered cancelled pursuant to 15 U.S.C. § 1119, 15 U.S.C.A. § 1119.

14. Plaintiff has waived an accounting for profits and damages.

15. Defendant's motion for leave to add the affirmative defense of laches is denied.

16. Defendant's motion to dismiss the complaint is denied.

17. Plaintiff is entitled to costs in this action.

A decree may be submitted in conformity with these findings of fact and conclusions of law.