**DOUGLAS LABORATORIES CORP.**

v.

**COPPER TAN, Inc.**

No. 137, Docket No. 22882.

United States Court of Appeals
Second Circuit.

Argued Jan. 8, 1954.

Decided Feb. 10, 1954.

Leslie D. Taggart, New York City (Raymond A. Ledogar, New York City, on the brief), for plaintiff-appellant-appellee.

John S. Finn, New York City (Louis Scadron, New York City, on the brief), for defendant-appellee-appellant.

Before CHASE, Chief Judge, CLARK, Circuit Judge, and GIBSON, District Judge.

CLARK, Circuit Judge.

Plaintiff has brought this action for trade-mark infringement and unfair competition to protect its use of the name "Coppertone" for its sun tan preparation against competition by defendant, which is using the name "Copper Tan" for its similar preparation. As the case was tried, jurisdiction was rested on the diverse citizenship of the parties. In a reasoned opinion, D.C.S.D. N.Y., 108 F.Supp. 837, Judge Edelstein made findings favorable to the plaintiff, including that of secondary meaning in the name, although he declined to uphold a common-law trade-mark (plaintiff having no registered trade-mark) because he held the word "Coppertone" to be descriptive, rather than fanciful. He therefore granted an injunction to plaintiff (with costs) enjoining the defendant from using the notation "The Original" and the address "Miami" in connection with "Copper Tan" in the Florida and New York markets; he also ordered cancelled defendant's U. S. trade-mark registration No. 503,807 for "Copper Tan." Both parties have appealed. We think his findings favorable to plaintiff are supported by the evidence, and his resulting conclusion, that defendant un-

fairly competed in marketing its sun tan preparation, is appropriate in the light of these findings. Hence defendant can take nothing by its appeal, and we affirm the judgment against it.

On the plaintiff's appeal we are constrained to hold the grant of relief inadequate. The court found, 108 F.Supp. at page 839:

"8. Benjamin Green, doing business as Douglas Laboratories, in Miami, Florida, adopted and began to use 'Coppertone' on a sun tan product in November of 1944. Plaintiff and its predecessors continuously used 'Coppertone' on their sun tan products, and by June of 1946, the designation was understood by the purchasing public in Florida and New York markets to identify a product whose origin had a single source."

It is also found that, while defendant began to make substantial efforts to market "Copper Tan" in June, 1946, yet at that time

"10. * * * the purchasing public in the Florida and New York markets did not understand the name 'Copper Tan' to identify a product originating from a single source."

Following further findings as to slanderous competition and the like by defendant, the court went on to find, 108 F. Supp. at page 840:

"15. The mark of the plaintiff at the time of the trial was a picture of an Indian above which appeared the words 'Don't be a paleface' and below which appeared the word 'Coppertone'."

It also found the following:

"17. Defendant, ever since its inception, has used and continues to use on its cartons the notation:

The Original

COPPER TAN

New York     Miami,

and on its labels the notation:

COPPER TAN, INC.
New York     Miami.

At no time has defendant had a place of business in Miami or outside the City of New York, and it is 'Coppertone' which originally achieved success in Miami.

"18. The use of the notation 'The Original' and the address 'Miami' on 'Copper Tan' products is likely to cause confusion or mistake or the deception of purchasers."

We think the record shows confusion in the names such as that plaintiff, if entitled to any relief, is entitled to full protection against the use of a similar name for like goods. First we regard the name as not descriptive, but fanciful, justifying the finding of a common-law trade-mark. And second and alternatively we hold that the findings, notably Finding 8 quoted above, justify and require the injunction.

In pointing out the limitation on common or generic or merely descriptive names for goods, the Restatement aptly says: "But it is the significance of the designation in connection with the goods upon which it is used, not its abstract significance, which is determinative. Thus the word 'Plow' cannot be a trade-mark for plows, but it can be a trade-mark for tomato juice. Though 'Revolvo' cannot be a trade-mark for revolving doors, it can be a trade-mark for headache pills. That a designation may have a suggestive significance in connection with the goods does not render it inappropriate for use as a trade-mark. The test is the imaginativeness involved in the suggestion, that is, whether the suggestion is so close and direct that it is apparently descriptive and generally useful in approximately that form to all merchants marketing such goods or is so remote and subtle that it is fanciful and not needed by other merchants of similar goods." 3 Restatement, Torts § 721, comment *a* (1938).

Each of the words "copper" and "tone," as color terms, has at best a derivative meaning. As Webster's New International Dictionary (2d Ed. Unabridged, 1939) shows, the original meaning of *copper* is the metal, with the word derived from that signifying the Island of Cyprus, coupled with the Latin "aes"; its usage as indicating color comes some three paragraphs down under the word as adjective, and not as noun. *Tone* is used primarily with reference to sound; its meaning as a *shade* of color is *eighth* in order in the dictionary. When the words are coupled together and referred to the human skin, which cannot be colored as may a hat, a dress, or like goods, we think a fanciful idea is conveyed, which is emphasized by the depiction of the Indian, as noted in Finding 15 quoted above. There are only certain things the sun can do to the skin, even when assisted or checked by a sun tan lotion; and an actual copper red is not achievable, for which we may all be duly thankful. For like a good trade-mark, the one used here sounds more fascinating than would be the result if actually obtainable. The name, in other words, is more properly a "come-on," to allure the trade, than a mundane description of the preparation itself or its indirect consequences. (For preparations such as these check or ameliorate, rather than produce, skin-coloring.) Without multiplying examples unduly, we may say that it seems at least as fanciful as, perhaps more than, "Floating Power" for engine mountings, "Mouse Seed" for mouse poison, "Golden Bake" for pancake flour, or "Stronghold" for ribbed nails. Chrysler Corp. v. Trott, 83 F.2d 302, 23 C.C.P.A., Patents, 1098; W. G. Reardon Laboratories v. B. & B. Exterminators, 4 Cir., 71 F.2d 515; Soy Food Mills v. Pillsbury Mills, 7 Cir., 161 F.2d 22, certiorari denied 332 U.S. 766, 68 S.Ct. 73, 92 L.Ed. 351; Independent Nail & Packing Co. v. Stronghold Screw Products, Inc., 7 Cir., 205 F.2d 921, certiorari denied Stronghold Screw Products, Inc., v. Independent Nail & Packing Co., 346 U.S. 886, 74 S.Ct. 138. See also Miles Shoes, Inc., v. R. H. Macy & Co., 2 Cir., 199 F.2d 602; Pastificio Spiga Societa Per Azioni v. De Martini Macaroni Co., 2 Cir., 200 F.2d 325.

■■ But in any event upon finding a secondary meaning proven, the judge should have granted the injunction against use of the confusing name. The case cited as holding the words here not capable of exclusive appropriation as a trade-mark, Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536, was one where no secondary meaning was shown. See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 335 footnote 24, 59 S.Ct. 191, 83 L.Ed. 195; and see also Standard Paint Co. v. Rubberoid Roofing Co., 7 Cir., 224 F. 695; Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 40 A.L.R. 424; Id., 3 Cir., 29 F.2d 474; Triangle Publications v. Rohrlich, 2 Cir., 167 F.2d 969; Speed Products Co. v. Tinnerman Products, 2 Cir., 179 F.2d 778. Some attack is made on the crucial finding as lacking adequate support in the evidence and hence "clearly erroneous" under F.R. 52(a), 28 U.S.C.A. Actually, however, it is supported by a considerable amount of testimony from druggists and retailers, department store buyers, and customers, with corroborating evidence of plaintiff's advertising and sales, as well as the knowledge of the "Coppertone" reputation by defendant's officers when they incorporated and tried to capitalize on it for their own profit. Actually defendant is attacking not the existence, but the amount and size, of plaintiff's sales in the period 1944–1946; but the rapid growth from a small beginning is itself impressive.

The judgment should therefore be modified by extending the injunction to prohibit the defendant from using the name "Copper Tan" or other convenient synonym in the marketing of its products. With this modification the judgment will be affirmed, with costs here and below to the plaintiff.