**RJR FOODS, INC., Plaintiff-Appellee,**

v.

**WHITE ROCK CORP. and White Rock Products Corp., Defendants-Appellants.**

**No. 898, Docket 78–7636.**

United States Court of Appeals, Second Circuit.

Argued May 7, 1979.

Decided Aug. 14, 1979.

James G. Foley, New York City (Pennie & Edmonds, George F. Long, III, and Robert T. Scherer, New York City, Hall, McNicol, Hamilton & Clark, Laurence G. Bodkin, Jr., New York City, of counsel), for defendants-appellants.

R. Bradlee Boal, New York City (Cooper, Dunham, Clark, Griffin & Moran, Peter D. Murray and Guy M. Blynn, New York City, of counsel), for plaintiff-appellee.

Before SMITH, OAKES and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

On this appeal we are asked once again to determine how closely the manufacturer of a new product can simulate the trade dress of an established competitive product without being guilty of unfair competition. Defendant appeals from a judgment of the United States District Court for the Southern District of New York, Pierce, J., holding that it had overstepped permissible bounds. We affirm.

Plaintiff, RJR Foods, Inc., is by far the country's largest producer of red fruit punch, which it markets under the name "Hawaiian Punch Fruit Juicy Red". The district court found that since at least 1969 RJR has used a peculiar label design to identify this product. Essentially, this consists of a tall, clear glass filled with a deep red beverage, superimposed upon a deep blue background. The name of the punch appears in white letters with dark shadowing across the front of the glass, together with a yellow banner containing the words "Enriched with Vitamin C". Representations of various fruits formerly appeared at the foot of the label; however, flowers have recently been substituted for the fruit because of proposed labeling requirements of the Food and Drug Administration.

Plaintiff has spent millions of dollars in advertising its Hawaiian Punch, approximately $36 million having been expended during the two years preceding trial. The district court found that, as a result of this "vigorous" advertising campaign and the public's wide acceptance of the product identified by the distinctive label, certain elements of the label design constituted a strong mark with an acquired secondary meaning. The district judge found support for this conclusion in a research study showing that two-thirds of the persons contacted by the researchers identified as Hawaiian Punch an Hawaiian Punch can with the name, the character "Punchy", and the words "Fruit Punch" and "with 7 real fruit juices and other natural flavors" removed. He also relied upon two television commercials of the General Foods Corporation in which their powdered product, Kool-Aid, was compared with a similarly unmarked can identified only as the "leading punch". The unnamed "leading punch" was subsequently identified by the sponsors as plaintiff's Hawaiian Punch.

To be entitled to the benefit of the secondary meaning doctrine, a plaintiff must establish that the purchasing public has come to associate certain words, symbols, collocations of colors and designs, or other advertising materials or techniques, with goods from a single source. *John Wright, Inc. v. Casper Corp.*, 419 F.Supp. 292, 317–19 (E.D.Pa.1976), *modified on other grounds*, 587 F.2d 602 (3rd Cir. 1978); *Ralston Purina Co. v. Thomas J. Lipton, Inc.*, 341 F.Supp. 129, 133 (S.D.N.Y.1972); *Douglas Laboratories Corp. v. Copper Tan, Inc.*, 108 F.Supp. 837, 841 (S.D.N.Y.1952), *aff'd*, 210 F.2d 453 (2d Cir.), *cert. denied*, 347 U.S. 968, 74 S.Ct. 779, 98 L.Ed. 1109

(1954). The district court did not err in finding that plaintiff had met this burden.

■ In making this determination, the district judge properly considered evidence of plaintiff's extensive advertising and sales. *Douglas Laboratories Corp. v. Copper Tan, Inc., supra,* 210 F.2d at 456; *My-T Fine Corp. v. Samuels,* 69 F.2d 76, 77 (2d Cir. 1934). The results of the research study could also be accepted as probative. *See Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 523 F.2d 1331, 1341 (2d Cir. 1975); *Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366, 381, 385–88 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). The fact that General Foods, a competitor, did not feel it necessary to describe the unlettered can of Hawaiian Punch by any more descriptive term than "leading punch" furnished further support for Judge Pierce's finding. Finally, there was telling evidence that the defendant attempted to capitalize on the trade dress of plaintiff's punch when it introduced its own punch. *See Douglas Laboratories Corp. v. Copper Tan, Inc., supra,* 210 F.2d at 456; *Socony-Vacuum Oil Co. v. Rosen,* 108 F.2d 632, 636 (6th Cir. 1940).

In 1976, defendant requested Continental Can Company to design a label for its punch, which it was planning to market under the name "Punch N' Fruity". The order form indicates that an Hawaiian Punch can was submitted with the order, along with the following instructions:

"Customer would prefer to utilize a blue background similar to sample can.
Show the enriched with Vitamin C logo. Customer has preference for a large display of fruit along lines of paper label. Ingredients clause will be similar to sample can so room should be allowed."

■ Although the designers denied they had received the sample can of Hawaiian Punch referred to in the order, Judge Pierce was obviously satisfied by other evidence in the record that, even without the sample, the designers were able to and did pattern defendant's can closely after plaintiff's. As a result, defendant's can depicts a tall clear glass filled with a deep red beverage superimposed upon a deep blue background. The name of the punch appears in white letters with dark shadowing across the front of the glass, together with a yellow banner containing the words "Enriched with Vitamin C". A quantity of fruit is depicted around the base of the glass. Judge Pierce found that there was a visual similarity between plaintiff's and defendant's cans, and this Court, having examined the same cans, agrees. This intentional simulation on the part of the defendant supports plaintiff's argument that it had succeeded in creating consumer recognition and good will for its product's dress which defendant was seeking to appropriate. *Socony-Vacuum Oil Co. v. Rosen, supra,* 108 F.2d at 636.

■ In addition to supporting plaintiff's claim to a distinctive trade dress, defendant's conscious imitation also supports at least a presumption that the similarity will cause customer confusion. *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.,* 281 F.2d 755, 758–59 (2d Cir. 1960); *My-T Fine Corp. v. Samuels, supra,* 69 F.2d at 77. The test of customer confusion is not whether the products can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general overall impression. *Harold F. Ritchie v. Chesebrough-Pond's Inc., supra,* 281 F.2d at 762. If the similarities in appearance are such that they would be unduly confusing to the average consumer, the defendant has trespassed upon the plaintiff's rights. *Feathercombs, Inc. v. Solo Products Corp.,* 306 F.2d 251, 257 (2d Cir.), *cert. denied,* 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962).

This Court must accept, unless clearly erroneous, those factual findings of the trial judge that are based directly upon his acceptance or rejection of a witness's recollection and credibility. The inferences to be drawn from the district judge's testimonial findings are subject, however, to a more searching review. *American Tobacco Co. v. The Katingo Hadjipatera,* 194 F.2d 449, 451 (2d Cir.), *cert. denied,* 343 U.S. 978, 72 S.Ct.

1076, 96 L.Ed. 1370 (1951). A stricter standard of review is also applied where the district judge's inferences were drawn in part from documentary evidence available for inspection by this Court. *Fur Information and Fashion Council, Inc. v. E. F. Timme & Son, Inc.,* 501 F.2d 1048, 1050–51 (2d Cir.), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974).

However, each case must be decided on its own facts, *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., supra,* 281 F.2d at 757, and, if the district judge correctly followed established principles in making his findings, they will not lightly be overturned. *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, supra,* 523 F.2d at 1340; *Magazine Publishers, Inc. v. Ziff-Davis Pub. Co.,* 147 F.2d 182, 185 (2d Cir. 1945). In finding a likelihood of confusion in the instant case, Judge Pierce considered the strength and secondary meaning of plaintiff's trade dress, the similarities of the products and their dress, defendant's intent in effecting the challenged simulation, the competitive proximity of the products, the buying habits of their probable users, and instances of actual confusion. These were all proper evaluative factors. *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, supra,* 523 F.2d at 1336.

In addition to the findings already referred to, the district judge found that the punches produced by plaintiff and defendant were offered to the public through similar channels of trade, such as supermarkets, vending machines, coolers, and catering bins. *See Taylor Wine Co. v. Bully Hill Vineyards, Inc.,* 569 F.2d 731, 733 (2d Cir. 1978); *Colgate-Palmolive Co. v. North American Chemical Corp.,* 238 F.Supp. 81, 86 (S.D.N.Y.1964). He found also that the products' modest cost was not conducive to the exercise of careful selectivity by purchasers. *See American Chicle Co. v. Topps Chewing Gum, Inc.,* 208 F.2d 560, 563 (2d Cir. 1953). Finally, he received and credit-

ed evidence from two witnesses who were actually confused because of the products' similarity of appearance,[1] together with the results of a consumer study showing a fifteen to twenty percent rate of product confusion. *See Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, supra,* 523 F.2d at 1340–41; *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., supra,* 281 F.2d at 760–72; *Spangler Candy Co. v. Crystal Pure Candy Co.,* 353 F.2d 641, 643–44 (7th Cir. 1966). Because there was substantial evidence to support Judge Pierce's findings, they will not be overturned.

Defendant's final argument, that the district judge abused its discretion in ordering an accounting, is without merit. *W. E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 664 (2d Cir. 1970); *Monsanto Chemical Co. v. Perfect Fit Products Manufacturing Co.,* 349 F.2d 389, 395–97 (2d Cir. 1965), *cert. denied,* 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966).

The order and judgment appealed from are affirmed.

---

1. Although one of the witnesses was employed by plaintiff and the other by one of plaintiff's distributors, their credibility and the weight to be given their testimony was for the trial judge. His finding of actual confusion will not be overturned unless clearly erroneous. *Miss Universe, Inc., v. Patricelli,* 408 F.2d 506, 509 (2d Cir. 1969).