**CLAIROL, INC., Plaintiff,**

v.

**COSMAIR, INC., Defendant.**

**No. 83 Civ. 3013 (KTD).**

United States District Court, S.D. New York.

July 16, 1984.

Milgrim, Thomajan, Jacobs & Lee, New York City, for plaintiff; Griffith B. Price, Jr., Steven Hartman, New York City, of counsel.

Brumbaugh, Graves, Donohue & Raymond, New York City, for defendant; Russell Falconer, Doreen Leavens, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiff Clairol Incorporated, a leading manufacturer of hair coloring products, has produced and marketed a shampoo-in gentle hair lightener under the registered trademark "SUMMER BLONDE" for over 20 years. It seeks injunctive and monetary relief for alleged trademark infringement by Cosmair, Inc., better known as L'Oreal,[1] which since the spring of 1983 has sold a competing product under the name "SUMMER SUN." Clairol seeks to enjoin L'Oreal from further use of the mark "Summer Sun," and also seeks from L'Oreal all profits earned from the sale of "Summer Sun," and compensatory damages. As I find that there has been no showing by Clairol of

---

1. The L'Oreal Division of Cosmair, Inc., manufactures, sells and distributes all L'Oreal products in the United States.

any likelihood of consumer confusion as to the source of SUMMER SUN, plaintiff's complaint is dismissed.

## I.

Clairol and L'Oreal are direct competitors in the manufacture and distribution of hair coloring products throughout the United States. Since the early 1960's, Clairol has marketed a hair lightener under the trademark SUMMER BLONDE. On October 4, 1966, it was granted Trademark Registration No. 816,260 on the Principal Register for the mark as used in a hair lightener. SUMMER BLONDE has long been one of the leading products of its kind, with sales over the period 1965–1983 exceeding $40 million.

In 1981, Clairol decided to reformulate and repackage the product. After test-marketing programs in Phoenix and Seattle, the reformulated SUMMER BLONDE was introduced nationally in 1982. A "gentle hair lightener," meaning it contains no dyes, SUMMER BLONDE is promoted for use by persons having blonde, brown or auburn hair. It was introduced in two strengths, designated A LOT OF SUN and A LITTLE SUN, both of which are shampooed into the hair.[2]

Clairol's primary target market for SUMMER BLONDE consists of young women, ages 13 to 25. By promoting an easy-to-use hair coloring product containing no dyes, Clairol hoped to introduce young women to the hair coloring market, and thus make them more receptive to stronger coloring products as they grow older. In fact, however, 40% of SUMMER BLONDE's users are over 25, and 16% are over 35.

SUMMER BLONDE's sales are highest in spring and summer, as is true with most hair lighteners. Clairol promotes the product only during these months, primarily by radio ads. During both 1982 and 1983, it conducted an extensive promotional campaign for its SUMMER BLONDE line, under the name Fun In the Sun. Centered around consumer contests run by radio stations across the country, the program was awarded the ABC Radio 1982 Merchandising Excellence Award. Since introducing the reformulated and repackaged SUMMER BLONDE, Clairol's aggregate sales for the line have exceeded $9 million.

At the time Clairol was updating SUMMER BLONDE, L'Oreal was already a direct competitor. From about 1967, it had marketed a hair lightener under the trademark YOUNG BLONDE, which was registered with the United States Trademark office since 1972. YOUNG BLONDE came in four strengths, the weakest of which, called "Natural Blonding," contained no dye. In 1982, these were the only two shampoo-in gentle lighteners on the market without dyes. Other gentle lighteners then on the market were not "shampoo-in" types and included the industry leader, Chattem Inc.'s SUN-IN, a spray pump gentle lightener, and Del Laboratories' SUMMER SHINE, a spray-on hair lightener, both without dyes. L'Oreal had never received any protest from Clairol over its use of the mark YOUNG BLONDE in competition with SUMMER BLONDE.

In late 1981, L'Oreal, seeing small and decreasing sales levels for YOUNG BLONDE, decided to reformulate the product and introduce it under a new name, with new packaging. As the "Natural Blonding" formulation was by far the best selling, L'Oreal decided that its new lightener would contain no dyes.

Shortly before its formal introduction in the spring of 1983, Clairol learned, through unconfirmed reports, that the new L'Oreal product would be called SUMMER SUN. Clairol's President, John W. Melton, wrote to L'Oreal, protesting that use of the mark SUMMER SUN for a product that would directly compete with SUMMER BLOND would "surely cause confusion upon the part of customers." L'Oreal's President, Lindsay H. Owen-Jones, responded that he

**2.** In 1983, Clairol added a third version of SUMMER BLONDE, designated A TOUCH OF SUN. Unlike the other two versions, A TOUCH OF SUN is sold in a pump spray and is sprayed on the user's hair to achieve a slight lightening effect.

had referred the matter to corporate counsel. On April 8, 1983, L'Oreal responded that it did "not concur with [the] conclusion that concurrent use of the brand names SUMMER BLONDE and SUMMER SUN is likely to confuse consumers."

L'Oreal's official announcements to the trade confirmed that it was introducing SUMMER SUN in two strengths, "Natural Lightening" and "Natural Extra Lightening," that it was aimed at women, ages 18–35, and also stated that L'Oreal would run a consumer sweepstakes under the heading "Fun in the Sun." Clairol immediately informed L'Oreal that it had used "Fun in the Sun" to denote its promotion in 1982, and was planning to do so again in 1983. L'Oreal, which had run a marketing program entitled "Follow the Sun" in 1981 to promote YOUNG BLONDE, explained that it was unaware of Clairol's use of "Fun in the Sun," and that the name had been selected by an outside advertising agency. L'Oreal agreed not to run the promotion.

Clairol filed its complaint on April 19, 1983, alleging trademark infringement, unfair competition, and dilution of its registered and common law trademark. On April 27, 1983, Judge Knapp denied Clairol's motion for expedited discovery. At the suggestion of defendant's attorney, Judge Knapp also proposed that Clairol perform a consumer survey to determine if there was any likelihood of confusion resulting from the parties' concurrent use of SUMMER BLONDE and SUMMER SUN for directly competitive products. Clairol then advised L'Oreal that it would commission such a survey and that if the survey showed that consumer confusion was unlikely, Clairol would reconsider its claims in this action. As Clairol believed that the results of that survey showed a strong likelihood of confusion, it continued this action, and a non-jury trial was held before me on June 4–7, 1984.

## II.

■ The test in a trademark infringement case is whether the defendant's trademark is likely to confuse the public as to the product's source. 15 U.S.C. § 1114(1); *McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1130 (2d Cir.1979). Relevant factors in determining infringement in a case involving directly competing products are the strength of Clairol's mark, the degree of similarity between the marks, L'Oreal's intent in adopting its mark, and evidence of consumer confusion between the two products. *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,* 687 F.2d 563 (2d Cir.1982). After analyzing the evidence on each of these factors, I conclude that Clairol has not shown a sufficient likelihood of confusion to support a claim of trademark infringement.

### A. *Strength of the Mark.*

■ The term "strength" as applied to a trademark means its "distinctiveness" or "its tendency to identify the goods sold under the mark as emanating from a particular ... source," *McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979). A mark's strength "determines both the ease with which it may be established as a valid trademark and the degree of protection it will be accorded." *Id.*

Trademarks are classified into four categories. In descending order of protection, they are (1) "arbitrary or fanciful" terms, which are usually terms invented solely for their classification as trademarks; (2) "suggestive" terms, which "require[ ] imagination, thought and perception to reach a conclusion as to the nature of the goods," *Stix Products v. United Merchants & Manufacturers, Inc.,* 295 F.Supp. 479, 488 (S.D.N.Y.1968); (3) "descriptive" terms, which "convey an immediate idea of ingredients, qualities or characteristics of the goods," *id.*; and (4) "generic" terms, which have come to be identified as the names of articles rather than the sources of particular brands of those articles, *e.g.,* "thermos," or "cellophane." *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9–11 (2d Cir.1976).

These differences become important, because whereas a suggestive term is pro-

tected as a trademark, a term that is "merely descriptive," 15 U.S.C. § 1052(e), can be registered as a mark only if it has "become distinctive of the applicant's goods in commerce," 15 U.S.C. § 1052(f).

Clairol contends that SUMMER BLONDE is descriptive neither of the time of year the product should be used, the type of person that the product is aimed at, nor the resulting hair color the product imparts to a user. Rather, it argues that SUMMER BLONDE is a suggestive term connoting a carefree, outdoor-oriented lifestyle.

L'Oreal, on the other hand, argues that the mark is merely a combination of two descriptive terms: "Summer," which describes the season when advertising and sales of hair lighteners are at their highest, and "Blonde," which is nothing more than the description of the color obtained from the use of the product. It contends that combining these two marks merely results in a term describing a type of light blonde associated with the summer.

The fact that the Patent Office was willing to register SUMMER BLONDE on the Principal Register tends to rebut the suggestion that it is "merely descriptive." *American Home Products v. Johnson Chemical Co.*, 589 F.2d 103 (2d Cir.1978). Indeed, many users of the product are not blonde, and do not become blondes upon shampooing it into their hair.

The fact that the mark may be valid, however, does not make it strong. Those pictured on the box of the product have what appears to be sun-bleached hair. Clairol's print ads implore the consumer to "Be a Summer Blonde." Thus, for many users, the trademark conveys an immediate idea of the qualities of the product: it has a blonding effect on the hair, just as the sun would in summer months.

At most, then, SUMMER BLONDE is partly descriptive and partly suggestive. In the end, however, while there is some doubt in my mind as to the underlying availability of the mark, I need go no further on this issue, since even if SUMMER BLONDE were at the suggestive end of

this spectrum, Clairol has made no showing either that L'Oreal acted in bad faith, or that consumers are likely to be confused by the presence of SUMMER SUN on the market.

B. *Similarity of the Marks.*

The crucial inquiry here is whether, taking into account the similarity of names, the packaging of the two products, and the overall impression they create, whether a reasonably prudent consumer who has previously heard of SUMMER BLOND will confuse the two products if SUMMER SUN is later presented by itself. *American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d at 107. I conclude that such a consumer would not be confused here.

In assessing likelihood of confusion, the mere fact that two marks may share words in common is not determinative. *McGregor-Doniger, Inc. v. Drizzle, Inc., supra*, 599 F.2d at 1133.

Thus, Clairol concedes, as it must, that the mere fact that both SUMMER BLONDE and SUMMER SUN contain the word SUMMER is not dispositive of their claim. Indeed, I note that L'Oreal's former product YOUNG BLONDE competed with SUMMER BLONDE apparently without even a claim of confusion. Clairol nonetheless contends that confusion is likely to result from a number of similarities in name packaging and marketing. Each allegation will considered in turn.

First, Clairol argues that the presence of SUN in the name of L'Oreal's product creates confusion, because Clairol's SUMMER BLONDE shampoo-in formulas come in two strengths, designated on the package as A LOT OF SUN and A LITTLE SUN. I disagree. There is absolutely no evidence that these marks are anything more than shade designations, or that consumers associate SUMMER BLONDE with the terms A LOT OF SUN and A LITTLE SUN. The fact that the word SUN appears on SUMMER BLONDE's packaging, then, does not

render SUMMER SUN confusing similar in sound to SUMMER BLONDE.

Second, Clairol contends that visually, the packages are confusingly similar. I disagree. The cartons are different shapes, SUMMER BLONDE's being taller and narrower. In addition, SUMMER BLONDE packages bear the picture of a man and a woman on the top half of the front of the carton, while the packages for both strengths of SUMMER SUN bear the full length picture of only a woman. The man and woman pictured on SUMMER BLONDE appear to be younger than the women pictured on SUMMER SUN. This bears out L'Oreal's contention that its target market is women ages 18–35, while the largest purchasing group of Clairol's SUMMER SUN are women ages 13–19. Furthermore, the typeface used for each of the two marks is decidedly different. SUMMER BLONDE appears in bold white letters with a solid yellow circle for the "O". SUMMER SUN, on the other hand, is written in yellow script. Finally, and most importantly, consumers are not likely to be confused as to the manufacturer of SUMMER SUN. "L'Oreal" is printed in large white letters on the front of the package, and also in four other locations on the package. Clairol's name, by contrast, is printed in small yellow letters on the face of its package. Given that L'Oreal's name is much more prominent on its package, and that L'Oreal and Clairol are two of the best known names in the hair coloring products field, I see no likelihood that a consumer will be confused as to the source of the products.

Third, Clairol argues that the likelihood of confusion is enhanced by the fact that the two competing products are low cost "impulse purchase" items, likely to be purchased without much care or circumspection. I also find this unpersuasive. Although this proposition may be true for items such as soft drinks, *see, e.g., RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir.1979), or spices, *see, e.g., Spice Islands, Inc. v. Frank Tea and Spice Co.*, 505 F.2d 1293, 1296 (C.C.P.A. 1974), it is hardly self-evident that consumers purchase hair-coloring products as casually as they do food items.

Finally, I find no merit to Clairol's argument that similarities in marketing enhance confusion between the products. Clairol's advertising seeks to create the impression of a carefree, outdoors-oriented lifestyle, primarily of young people. Representatives from L'Oreal, on the other hand, testified that it specifically changed the name of its product from YOUNG BLONDE to SUMMER SUN to avoid the chance that it would be associated only with young consumers, and also to ensure that its appeal would not be limited to those with blonde or light brown hair.

Thus, even though SUMMER BLONDE and SUMMER SUN are directly competing products sold through the same channels of distribution, I conclude they are different enough in terms of name, packaging and impression to avoid the likelihood of confusion by the average consumer.

C. *Intent.*

Clairol's contention that L'Oreal adopted SUMMER SUN as a mark in a deliberate attempt to imitate SUMMER BLONDE has no merit.

L'Oreal's decision to replace its YOUNG BLONDE lightener was a rational business decision made in response to poor sales levels. When deciding on a mark for its new product, L'Oreal considered adopting other marks incorporating the term SUMMER or SUN, including SUN GLEAMS, SUN STREAMERS, SUN SHOWERS, SUNSHINE BLONDE, SUDDENLY SUMMER, SUMMER LIGHTS, SUNBRITE, SUNNY LIGHTS and SUMMER ALL YEAR. It chose SUMMER SUN only after conducting a search report and receiving the opinion of counsel that the name SUMMER SUN was not preempted. Moreover, the terms SUMMER and SUN are widely used in the cosmetics industry. As the product is supposed to lighten the hair in the same way the sun does during the summer, and is advertised and sold primarily in the summer, I see no bad faith in

choosing a name that accurately describes some of its attributes. The names of other gentle lighteners currently being sold, including Chattem's SUN-IN, Del Laboratories' SUMMER SHINE, and Golden California Co.'s SUMMER RAIN, reveal that the variety of possible names for these products is not unlimited. Finally, L'Oreal affirmatively moved to avoid confusion by displaying its "house name" on the package far more prominently than Clairol did on SUMMER BLONDE's package.

Finally, I find the testimony of L'Oreal officials, to the effect that they were unaware that (Clairol's sweepstakes in 1982 had gone by the name FUN IN THE SUN, to be credible. L'Oreal had previously run a "Follow the Sun" campaign. The new name was supplied by an outside agency, and was dropped as soon as Clairol voiced its objections. Clearly, L'Oreal was trying to avoid, not to create, confusion in the public's mind.

D. *Evidence of Confusion.*

Clairol commissioned Evaluative Criteria, Inc. (ECI), a nationwide market research firm located in Stamford, Connecticut, to conduct a study of consumer confusion between the products.

The ECI survey was conducted on what is referred to as a "mall intercept" basis, *i.e.*, the respondents were stopped and interviewed at central locations at shopping malls. Over a three-day period in May, 1983, 501 Caucasion women, ages 13–25, who did not have black or gray hair, and who had listened to some radio program during the previous week, were interviewed in shopping malls in six cities. Of the 501 women interviewed, 495 responses were used, as ECI's validation procedure revealed six responses where the interviewee was under 13 or over 25 years of age.

The survey was conducted as follows: After being stopped and asked a few questions to confirm that she was part of the appropriate "universe," each respondent listened to a four-minute tape recording which was intended to simulate a radio program. The tape consisted of some music, followed by two actual commercials, one for Coca Cola (intended for clutter purposes), one for SUMMER BLONDE, followed by more music. Respondents were then asked several demographic questions, so as to create a delay between the advertising and the test of recall. They then were led into a separate room where they saw one of two displays of hair coloring products, and were asked to select the product they had just heard advertised. A "control cell" of 245 women were shown an array of products in which SUMMER BLONDE, but not SUMMER SUN, appeared; a "test cell" of 250 women were shown an array of products where both SUMMER BLONDE and SUMMER SUN appeared. The control cell was designed to create a benchmark measurement whereby it could be shown how many consumers would correctly select SUMMER BLONDE if SUMMER SUN were not available. The test cell, on the other hand, was designed to indicate how many people incorrectly selected SUMMER SUN, having mistaken it for SUMMER BLONDE.

In the control group, 94.3% of the respondents selected SUMMER BLONDE as the product they had just heard advertised, while 5.3% incorrectly chose a different hair coloring. ECI described this 5% level as a "noise factor," *i.e.*, a certain level of misidentification that is present in every test situation. In the test group, 78.4% chose SUMMER BLONDE, while 14.4% of the respondents selected SUMMER SUN. Again, there was a "noise level" of 6% who chose one of the other hair colorings displayed. Clairol contends that the 14.4% figure for those who incorrectly chose SUMMER SUN after listening to a SUMMER BLONDE commercial represents confusion as to the source and identity of the two products and is more than ample to support a finding of infringement. I disagree.

 The weight to be given to the survey results is up to the trial court, as the trier of fact, to determine. *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons*, 523 F.2d 1331, 1341 (2d

Cir.1975). Both sides presented extensive expert testimony concerning the methodological soundness of the survey, including procedures for selecting respondents, selecting products placed in the array shown to respondents, and validating the accuracy of respondents' answers. I need not decide whether defendant's criticisms of the survey on these grounds are valid, since even if they are not, the survey at most shows confusion stemming from the word "SUMMER," which plaintiff concedes is not actionable.

As there is no evidence that any of the respondents had ever heard of SUMMER BLONDE prior to participating in the survey, I must assume that the survey results were based largely upon respondents' recall of the commercial. After hearing the tape of the commercial and reading a transcript thereof, I conclude that the survey based on it is of limited use to plaintiff in proving infringement.

The commercial stresses the seasonal nature of the product, claiming that it could make you "look like you spent a week in the sun." Although SUMMER BLONDE was mentioned five times in thirty seconds, Clairol was mentioned only once. Thus, it is hardly surprising that some people, having heard the commercial for the first time, would remember that it was for a hair lightener with the name "SUMMER" in it. Thus, the survey, which purports to show the percentage of people who mistake SUMMER SUN for SUMMER BLONDE, may show nothing more than the percentage of people confused by the word SUMMER alone. Clairol, however, concedes that the mere presence of the word SUMMER in a composite trademark is not enough to support infringement, as the validity of a mark must be determined by the mark as a whole. 1 J. T. McCarthy, *Trademarks and Unfair Competition*, § 11:10 at 458 (2nd ed.1984).

One could argue that Clairol has shown that its commercial effectively created consumer identification with its product because 94.3% of those in the control group correctly selected SUMMER BLONDE.

Once again, I disagree. SUMMER BLONDE was the only product shown to these women that had the name SUMMER in it, and since the thrust of the ad was that the product would make users look like they had spent time in the sun, it is not surprising that people picked it over the other products in the array, none of which had names or packaging remotely similar to SUMMER BLONDE: Miss Clairol, Colorsilk, Breck, Nice 'n Easy, Clairesse, Loving Care Lotion, and Loving Care Foam.

Thus, the survey may show only the lack of the effectiveness of Clairol's commercial, or the level of people confused because L'Oreal included SUMMER in its mark. Such confusion is not actionable. Given all the other factors which weigh against the plaintiff, I conclude that plaintiff has failed to show that L'Oreal, by marketing SUMMER SUN, has infringed its mark.

CONCLUSION

Sales of SUMMER BLONDE have continued to rise since L'Oreal introduced SUMMER SUN. Clairol, however, contends that sales have not grown to meet projected sales targets. While it may be true that some of this shortfall is due to SUMMER SUN, this is merely the result of competition. Clairol, however, cannot protect itself against competition, only against infringement. Based upon my findings that Clairol's trademark is not particularly strong, that L'Oreal introduced its product in good faith with no intent to deceive or confuse, and that there has been no showing that consumers have been, or are likely to be, confused by the presence of both products in the marketplace, all counts of plaintiff's complaint are dismissed.

Judgment for defendant is to be entered by the Clerk.

SO ORDERED.