**FOXTRAP, INC. t/a Foxtrappe,
Appellant,**

v.

**FOXTRAP, INC. t/a Foxtrappe,
Appellee.**

**No. 81–1373.**

United States Court of Appeals,
District of Columbia Circuit.

Submitted Without Oral Argument.

Decided Feb. 26, 1982.

---

James P. Hood and Richard J. Hopkins, Washington, D. C., were on the brief for appellant.

Claude W. Roxborough, Washington, D. C., was on the brief for appellee.

Before WALD, MIKVA and GINSBURG, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

This case challenges appellee's (plaintiff below) entitlement to injunctive relief and a $75,000 monetary award granted by the district court on a default judgment for trademark infringement and unfair competition. We uphold the injunction but vacate the monetary award and remand to the district court for specific findings of fact and conclusions of law on the basis for the award.

## I. BACKGROUND

In 1975, appellee incorporated as Foxtrap, Inc. in the District of Columbia, trading as Foxtrap, Inc., Foxtrappe and Fox Trap. The United States Patent and Trademark Office granted a Certificate of Registration, No. 1091420, to appellee in 1978. Foxtrap, Inc., D.C. is a private social club located in the District of Columbia, claiming approximately 9,200 members in Maryland (40%), the District of Columbia (20%), Virginia (10%), New York (8%), Georgia (5%), Philadelphia (1%), and elsewhere. Joint Appendix (J.A.) 28–29. Appellee's business consists of a private nightclub, an entertainment magazine and sponsorship of various special social events. Appellee recruited its 90 Philadelphia members in 1975 by mailing 2,000 solicitations to names obtained from the Congressional Black Caucus. J.A. 45.

In 1977, appellant organized as a Pennsylvania corporation, Foxtrap, Inc., trading as Foxtrap, Inc. and Foxtrap, located in Philadelphia. Appellant claims to operate as a public disco and bar; but its manager testified that he sometimes exacts a variable cover charge to keep a "certain clientele" out. J.A. 13. Apparently, appellant has conducted all of its business in Philadelphia except for one occasion. In 1980, appellant advertised in the District of Columbia for a trip it was sponsoring to Montreal. Appellant cancelled the trip, however, because of an insufficient response to its advertisements.

Appellee first complained to appellant in 1977 about trademark infringement of its name, Foxtrap. J.A. 8–9. When appellee's protests failed to move appellant, appellee brought this action in the district court on June 16, 1980. The court entered a default judgment for plaintiff and held a hearing to fashion an appropriate remedy. The district court permanently enjoined appellant from using the words Foxtrap, Inc., Foxtrap or Foxtrappe as part of its trade name, and ordered appellant to pay $75,000 to appellee, plus costs. Appellant subsequently brought this appeal, challenging both the injunction and the monetary award, and specifically alleging error in the district court's failure to make findings of fact under Rule 52(a), Federal Rules of Civil Proce-

dure.[1] Appellant does not contest the default judgment.

## II. ANALYSIS

### A. *Injunctive Relief*

The district court's grant of an injunction does not appear to be clearly erroneous. Although an injunction is traditionally available only if the remedy at law is inadequate, "it is difficult to imagine an unfair competition case where damages are adequate .... " 2 J. McCarthy, Trademarks and Unfair Competition 328–29 (1973) (hereinafter J. McCarthy). Denying injunctive relief would force a plaintiff to endure continuing infringement and to bring successive suits for money damages. *Id.* at 329. Furthermore, the Lanham Act, § 34, 15 U.S.C. § 1116 (1976), expressly provides authority to courts to grant injunctions on terms they deem reasonable.

Appellant first argues that appellee is not entitled to injunctive relief because (1) the parties do not offer competitive services, and (2) appellee's rights in its mark do not extend to Philadelphia. Appellant argues alternatively that the injunction was unreasonably broad; that it would have been sufficient to require appellant to distinguish its trade name by a descriptive legend, *e.g.*, Foxtrap, Inc. of Philadelphia. Neither applicable law nor the record supports appellant's position.

■ The Lanham Act, § 32, 15 U.S.C. § 1114(1),[2] provides that the test for injunctive relief is whether "such use is likely to cause confusion, or to cause mistake, or to deceive" the public. *See Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 705 (2d Cir. 1970), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). Direct competition between the parties' services is "not a prerequisite to protective relief." *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857, 861 (5th Cir. 1967). Rather, the inquiry is whether the buying public is likely to believe that defendant's services come from the same source, or are affiliated with the trademark owner. *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1252 (4th Cir. 1970); 2 J. McCarthy 124. Here, the marks are identical and the record contains evidence showing that the businesses are so related that they are likely to be connected in the mind of a prospective buyer.[3] *See Fleischman Distilling Corp. v. Maier Brew-*

---

1. Fed.R.Civ.Proc. 52(a) provides:

 In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

 The judgment in this case was entered pursuant to Rule 55 (Default) rather than Rule 56 (Summary Judgment). When a default judg-

 ment is attended by a hearing on damages, the trial judge need not render findings and conclusions on portions of the case not "tried upon the facts," but the judge is obliged by Rule 52(a) to state findings and conclusions as to damages. *See In re Uranium Antitrust Litigation*, 473 F.Supp. 382, 391 (N.D.Ill.1979), *rev'd, on other grounds* 617 F.2d 1248 (7th Cir. 1980). *Accord, Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973).

2. 15 U.S.C. § 1114(1) provides:

 (1) Any person who shall, without the consent of the registrant—

 (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; ... shall be liable in a civil action by the registrant for the remedies hereinafter provided.

3. Although one club is distinctly private and the other at least quasi-public, both operated in similar segments of the entertainment field.

**640**

*ing Co.*, 314 F.2d 149, 155 (9th Cir.), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963). In fact, both parties testified that customers actually had confused the relationship between the two establishments.[4] J.A. 24–25, 31. Appellant's argument that the businesses are distinctive is thus misplaced.

 The second prong to appellant's first "non-competitive" argument—that injunctive relief does not lie because the two clubs operate in different geographical areas—is also unavailing. Under the Lanham Act, a federal registrant is entitled to enjoin a remote junior user of the mark if there is a likelihood of the registrant's entry into the disputed area.[5] *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 362 (2d Cir. 1959). Here, appellee's membership sales in Philadelphia predating appellant's use of the mark are sufficient to show that likelihood. So far as appellee is concerned, Philadelphia is not a remote or inaccessible area at all. *See Sweetarts v. Sunline, Inc.*, 436 F.2d 705, 709–10 (8th Cir. 1971). However, under the Act, 15 U.S.C. § 1115(b)(5),[6] a limited area defense is

available if the defendant can show: (1) that it adopted the mark without knowledge of plaintiff's prior use; (2) that its use predates plaintiff's registration; (3) that its use in the disputed area has been continuous since that time; and (4) the extent of the disputed area at the time plaintiff received its registration. 2 J. McCarthy 235–36. In the present case, the record indicates that defendant failed to carry its burden on the first element. The evidence showed that defendant's manager manifested awareness of plaintiff's mark as early as 1977, the year in which the Philadelphia club opened. J.A. 9.

 Appellant's second complaint[7] is that this injunction, totally prohibiting its use of Foxtrap, Inc., Foxtrap, and Foxtrappe, is too broad. It is true that the scope of an injunction should be determined by balancing harm to the plaintiff, other means of avoiding such harm, and the relative inconvenience to the defendant. *See* 2 J. McCarthy 329. In line with the trial judge, however, we too are skeptical of appellant's argument that a descriptive leg-

4. *See Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 612 (7th Cir. 1965) (Evidence of potential buyer's actual confusion is strong proof of probable confusion.).

5. The Lanham Act thus significantly expanded a registrant's rights over prior common law. Under two landmark cases, *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916) (*Tea Rose*) and *United Drug Co. v. Rectanus*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918) (Rectanus), a "national senior user [could not] oust a geographically remote good-faith user who has used the mark first in a remote trade area. 2 J. McCarthy, Trademarks and Unfair Competition 208 (1973). By providing that registration constitutes constructive notice of the registrant's rights, the Lanham Act removed the good faith element in the *Tea Rose-Rectanus* defense. *See Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 362 (2d Cir. 1959). *See also In re Beatrice Foods*, 429 F.2d 466, 472 (CCPA 1970) (right to enjoin another from use of the mark enforceable only in areas of current business use or probability of expansion).

6. 15 U.S.C. § 1115(b)(5) provides:
(b) If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclu-

sive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the affidavit filed under the provisions of said section 1065 subject to any conditions or limitations stated therein except when one of the following defenses or defects is established:
. . . . (5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved . . . .

7. Appellant also argues that Pennsylvania's authorization of its corporate name provides a defense to appellee's claim. But this circuit, following the general rule, has declined to accord any weight to a state agency's general acceptance of a corporate name. *See Lawyers Title Ins. Co. v. Lawyers Title Ins. Corp.*, 109 F.2d 35, 44 (D.C.Cir.1939), *cert. denied*, 309 U.S. 684, 60 S.Ct. 806, 84 L.Ed. 1028 (1939); 2 J. McCarthy, *supra* note 5 at 254.

end such as Foxtrap of Philadelphia would suffice to distinguish the two clubs. Such a description would do little to counter any impression that the two establishments might be related to one another, or even branches of the same enterprise. The similarities in their line of business and the evidence that confusion already exists among potential customers convinces us that the district judge did not fashion an unnecessarily harsh remedy.

## B. *Monetary Award*

■ Under section 35 of the Lanham Act,[8] a plaintiff can recover the defendant's profits and his own damages. The trial court may award up to treble the actual damages, and adjust the award of profits as he deems just, depending upon the circumstances of the case. However, the Act specifically forbids the award of a penalty. Further, a plaintiff who succeeds in obtaining injunctive relief is not automatically entitled to a monetary remedy. *Carl Zeiss Stiftung*, 433 F.2d at 706–07.

■ Although the Lanham Act appears to give the trial court broad leeway in awarding monetary relief, courts have generally required proof that certain factors are present before approving a monetary award. These factors vary according to the measure of relief used. Here we do nct know what factors were behind the trial

judge's finding that "the evidence would sustain a judgment in favor of the plaintiff in the amount of $75,000." J.A. 48. We therefore agree with appellant's invocation of Rule 52(a) to argue that more precise factfinding and elaboration of judicial reasoning was necessary to support the award.

■ First, we believe the trial judge should state whether the award is based on defendant's profits, plaintiff's actual damages, or both, since each measure depends on different factors. Before making an award on the basis of defendant's profits, courts customarily require a plaintiff to show bad faith or willful infringement by the defendant.[9] *See, e.g., Carl Zeiss Stiftung*, 433 F.2d at 707 (deliberate intent to cause confusion necessary to recover defendant's profits); *Borg-Warner Corp. v. York-Shipley, Inc.*, 293 F.2d 88, 95 (7th Cir.), *cert. denied*, 368 U.S. 939, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961) (A finding of infringement does not, as a matter of right, entitle owner to recover profits under § 1117.). In fact, courts have insisted on a relatively egregious display of bad faith, *e.g.*, an " 'aura of indifference to plaintiff's rights and a smug willingness that the good will plaintiff sought to foster could safely be treated as a nullity.' " *W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970); *see also Stuart v. Collins*, 489 F.Supp. 827, 831 (S.D. N.Y.1980) ("infringing done knowingly and

8. 15 U.S.C. § 1117 (1976) provides:
 When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or

excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award attorney's fees to the prevailing party.

9. Where no bad faith was shown, some courts have based an award of defendant's profits on an unjust enrichment theory. 2 J. McCarthy, *supra* note 5 at 352–55. In such cases, the courts have required a showing that plaintiff's sales actually had been diverted, thus necessitating a showing of actual competition. *See Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1175 (2d Cir. 1976) (goods noncompetitive, therefore defendant's sales could not have resulted from diverting plaintiff's customers).

with callous disregard" of mark holder's rights). Although the record in this case may indeed contain enough evidence to support a finding of bad faith or willfulness,[10] that evidence is certainly not so overwhelming that we may assume that the district court did in fact make such a finding. In addition, the circumstance that such a finding must be based largely on witness testimony and demeanor makes it crucial that the district judge set it out on the record, if he is measuring the award by the defendant's profits.

 Second, any award based on plaintiff's damages requires some showing of actual loss. *See, e. g., Caesar's World, Inc. v. Venus Lounge*, 520 F.2d 269, 274 (3d Cir. 1975); *Bowman Instrument Corp. v. Continental Micro*, 497 F.Supp. 947, 961 (S.D.N.Y.1980). If the district court's award was to compensate plaintiff for its losses, there is no adequate record support for the dollar amount. Although appellee here alleged that appellant's infringement inhibited its membership sales in Philadelphia and liquor sales in Washington, D. C., it failed to carry its burden of proof as to any such losses. Appellee showed only one mail solicitation in 1975, before appellant was founded, directed at Philadelphia members. Nevertheless, appellee's Philadelphia membership has remained constant over the five years since its entry into that area. Although appellee spoke of failing to meet its "projections [of membership]," it offered no proof when challenged about any valid basis for such projections. J.A. 45–46. Furthermore, appellee testified that in making its calculations of possible losses based on these "projections," it did not consider the impact of gasoline's breathtaking price increases since 1975, surely a factor that must be accounted for in a business largely dependent on auto travel. J.A. 43. *Cf. Borg-Warner Corp.*, 293 F.2d at 95 (claimant's calculations failed to take into account changing market conditions). In short, if actual damages were the basis for the award, it must fail for inadequate evidentiary support.

 Finally, the Lanham Act states that a monetary recovery is "subject to the principles of equity" and is to be measured "according to the circumstances of the case." 15 U.S.C. § 1117 (1976). The statute thus requires careful tailoring,[11] yet we have no indication that the district judge took the parties' relative circumstances into account to determine, *e.g.*, whether the award amounted to a windfall to appellee or a penalty to appellant.

## CONCLUSION

The record supports the district court's injunction against appellant. The district court's one laconic finding that the appropriate monetary remedy was $75,000, however, failed to satisfy Rule 52(a)'s requirement that the court make clear the findings of fact and conclusions of law upon which its actions are grounded. This requirement is particularly important in cases where, as here, there are multiple legal theories of monetary remedies available, which depend upon different factual underpinnings for validity. We therefore *vacate* the $75,000 award and *remand* to the district court for detailed findings of fact and conclusions of law to support any award it may make.

---

**10.** Appellee showed Mr. Quitman, manager of Foxtrap (Philadelphia), a newspaper article quoting him as saying he hoped the Washington, D. C. club's glitter would "rub off" on his club. Mr. Quitman's response was equivocal. J.A. 6. Another comment by Mr. Quitman tended to show he was aware of appellee's mark in 1977. J.A. 9.

**11.** In this respect, the court should strive to assure that the award it orders will deter the

defendant, yet not be a windfall to plaintiff nor amount to punitive damages. *Compare W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d Cir. 1970) (only total award of profits will deter deliberate infringer) *with Stuart v. Collins*, 489 F.Supp. 827, 833 (S.D.N.Y.1980) (award should not be a windfall to plaintiff); *and* Lanham Act, § 35, 15 U.S.C. § 1117 (1976) (award shall not constitute a penalty).