**BAYSHORE GROUP LIMITED, Plaintiff,**

v.

**BAY SHORE SEAFOOD BROKERS, INC., Defendant.**

Civ. A. No. 89–2862–WF.

United States District Court, D. Massachusetts.

March 1, 1991.

Laura L. Carroll, Widett, Slater & Goldman, Boston, Mass., for plaintiff.

Patrick Tracy, Boston, Mass., John F. Doyle, Arlington, Mass., for defendant.

## ORDER

WOLF, District Judge.

As no objection has been filed to the Magistrate Judge's November 9, 1990 Report and Recommendation Re: Plaintiff's Application for a Preliminary Injunction and Request for Oral Argument, and the recommendation is in any event persuasive, plaintiff's motion for preliminary injunction is hereby DENIED.

This case is hereby referred to the Magistrate Judge for further pretrial proceedings.

REPORT AND RECOMMENDATION RE: PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION AND REQUEST FOR ORAL ARGUMENT (DOCKET ENTRY # 5)

November 9, 1990

BOWLER, United States Magistrate.

## I. INTRODUCTION

This is an action brought by BAYSHORE GROUP LIMITED, a Massachusetts corporation engaged in marketing and selling various seafood products, against BAY SHORE SEAFOOD BROKERS, INC. ("BAY SHORE SEAFOOD BROKERS"), a competing Massachusetts corporation engaged in marketing and selling various seafood products and in brokering products.

Count I of the Verified Complaint (Docket Entry # 1) filed on December 8, 1989, alleges that plaintiff has used the trademark and name BAYSHORE since its incorporation in January of 1985 and registration with the United States Patent and Trademark Office on January 28, 1986 and subsequent registration in Massachusetts on September 23, 1988 in connection with the sale of frozen fish fillets and other frozen seafood products. (*Id.*, ¶¶ 7, 8, 9). Plaintiff claims in Count I that defendant's use of the name BAY SHORE, under which the defendant manufactures, sells, and bro-

kers seafood products in Massachusetts and elsewhere in the United States, is almost identical and confusingly similar to the plaintiff's registered trademark BAYSHORE. (*Id.*, ¶ 19). Plaintiff also claims in Count I that defendant's use of the name BAY SHORE in connection with the sale of seafood products is likely to cause confusion and mistake among actual and prospective purchasers and in fact has caused such confusion and mistake as well as diluted the strength of the plaintiff's mark in violation of 15 U.S.C. § 1114. (*Id.*, ¶¶ 20, 21).

The remaining counts of plaintiff's Verified Complaint allege state and federal statutory and common law violations in connection with plaintiff's frozen seafood business. (Count II—violation of Massachusetts Anti–Dilution Statute (Mass. Gen.L. ch. 110B, § 11); Count IV—Common Law Trademark Infringement; Count V—Common Law Unfair Competition). Plaintiff further alleges, in Count III, that defendant's have engaged in unfair and deceptive practices in violation of Mass. Gen.L. ch. 93A, §§ 2 and 11.

On March 20, 1990, plaintiff filed an application for a preliminary injunction to enjoin defendant from "manufacturing, selling or brokering seafood products under the name BAY SHORE or any other name confusingly similar to plaintiff's registered BAYSHORE trademark." (Docket Entry # 5 and # 1, p. 11).

Plaintiff's Application for a Preliminary Injunction and Request for Oral Argument (Docket Entry # 5) has been referred here for report and recommendation. (*See* Order of Reference, Undocketed). A hearing was held on September 26, 1990. The defendant called John Monahan, Jr., President of BAY SHORE SEAFOOD BROKERS, to testify in support of its argument against the injunction. After reviewing the testimony, the parties' arguments, memoranda, affidavits and supporting documentation, the court RECOMMENDS that plaintiff's application for preliminary injunction be DENIED.

## II. FINDINGS OF FACT

### A. *Bayshore Group Limited*

The BAYSHORE mark was created in 1981 by Woodman's Sea Products Ltd. ("Woodman's") and Budd O'Brien, co-owner of Bay Bulls Sea Products Ltd. ("Bay Bulls") in Newfoundland, in connection with the packaging and sale of frozen seafood products produced by the two companies. (Docket Entry # 7, ¶ 2 and # 17, ¶ 2). Higdon's Seafoods, Ltd. ("Higdon's") joined the two companies in 1982 in the use of the BAYSHORE brand for packaging its products. (Docket Entry # 17, ¶¶ 3 and 10). Canadian Saltfish Corporation ("CSC"), a Canadian corporation, marketed the BAYSHORE products in the United States and elsewhere, primarily through brokers located in Massachusetts. (Docket Entry # 7, ¶¶ 2; 3 and # 17, ¶ 4).

In mid–1983, Coastal Fisheries, Inc. ("Coastal") began acting as the United States marketing arm for CSC in connection with BAYSHORE products. (Docket Entry # 7, ¶ 7; # 17, ¶ 5). Coastal declared bankruptcy in mid–1984, and subsequently, BAYSHORE GROUP LIMITED was incorporated in January of 1985 by Higdon's, Woodman's and CSC. (Docket Entry # 7, ¶¶ 8; 9 and # 17, ¶¶ 7; 8). The affidavits submitted by the parties conflict on whether the right to use the BAYSHORE name remains under the control of Budd O'Brien, co-owner of Bay Bulls Sea Products Ltd., or whether it was transferred to Higdon's and Woodman's in 1984 when Coastal declared bankruptcy. (Docket Entry # 11, ¶ 8 and # 17, ¶ 9 and 11). Bay Bulls has, according to plaintiff, packed frozen seafood under brand names other than BAYSHORE since 1984. (Docket Entry # 17, ¶ 9).

BAYSHORE GROUP LIMITED applied to register the BAYSHORE trademark. Certificate of Registration no. 1,380,638 was issued by the Commissioner of Patents and Trademarks on January 28, 1986 for the use of the mark BAYSHORE in connection with its frozen fish business. (Docket Entry # 1, Exhibit B). The BAYSHORE trademark was also registered by BAYSHORE GROUP LIMITED in Massachu-

setts on September 23, 1988, Certificate of Registration no. 41927, for use in connection with frozen seafood products. (Docket Entry # 17, ¶ 10; # 7, ¶ 18; # 1, Exhibit C). The plaintiff's mark, as registered in Massachusetts, consists of the word BAY-SHORE printed three times accompanied by a distinctive logo. (Docket Entry # 1, Exhibit C). The Massachusetts Registration Certificate specifies that plaintiff uses the mark by applying it directly to the containers for the goods. (*Id.*).

Plaintiff also registered the BAYSHORE mark in Canada on December 2, 1988 and February 10, 1989, Certificate of Registration No. 348,697 and No. 351, 489 respectively for use in connection with frozen fish and shellfish products. (Docket Entry # 7, Exhibit 2).

BAYSHORE GROUP LIMITED is presently owned by four shareholders: Woodman's; Higdon's; Universal Multifoods Limited; and Universal Fisheries Limited. Woodman's and Higdon's are the primary shareholders. The shareholders are all Newfoundland seafood processors, and plaintiff acts as the exclusive U.S. marketing arm for those processors. (Docket Entry # 7, ¶ 10; 11). Plaintiff is engaged in marketing and selling frozen seafood products, including cod, turbot, perch, flounder, and crab meat under the BAYSHORE mark to food service distributors, restaurant chains, and wholesalers. (*Id.*, ¶¶ 11; 12). Plaintiff sells directly to its customers across the United States and through brokers in Kentucky, Ohio, Michigan, New York, and Georgia. (*Id.*, ¶ 13; 14). Plaintiff has approximately 100 customers, and continues to promote the BAYSHORE name and label through trade shows, industry conventions, and joint promotions.

B. *Bay Shore Seafood Brokers, Inc.*

BAY SHORE SEAFOOD BROKERS, INC. ("BAY SHORE SEAFOOD BROKERS") was incorporated under Mass. Gen.L. ch. 156B, § 12 in November of 1982. (Docket Entry # 11, ¶ 1). BAY SHORE SEAFOOD BROKERS is engaged in the business of brokering fresh and frozen seafood products for various manufacturers to wholesale and retail markets. BAY SHORE SEAFOOD BROKER's main customers are the hatcheries of Southern Pride Catfish and Clear Springs Trout. (*Id.*, ¶¶ 2–3). A subsidiary of BAY SHORE SEAFOOD BROKERS, Yankee Specialty Foods, markets specialty clam chowders, soups and bisques under either the name BAY SHORE or BAY SHORE NEW ENGLAND. (*Id.*, ¶ 4).

### III. CONCLUSIONS OF LAW

Plaintiff, as the moving party seeking a preliminary injunction, must meet four criteria in order for the injunction to issue. The court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury to the plaintiff outweighs any harm which granting injunctive relief would inflict on the defendants; (3) that plaintiff has demonstrated a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the issuance of the injunction. *Vargas–Figueroa v. Saldana*, 826 F.2d 160, 162 (1st Cir.1987).

This court will address plaintiff's request for a preliminary injunction based on this standard as applied to each claim for relief asserted in the plaintiff's complaint.

A. *Trademark Infringement (15 U.S.C. § 1114 and Mass.Gen.L. ch. 110B, § 11)*

▮ The Lanham Act provides the controlling law for this action, because it involves issues concerning trademarks in interstate commerce. *See Thrifty Rent–A–Car System, Inc. v. Thrift Cars, Inc.*, 639 F.Supp. 750, 754 (D.Mass.1986), *aff'd*, 831 F.2d 1177 (1st Cir.1987) (discussing application of federal statute). The Lanham Act requires a liberal interpretation of the irreparable injury factor, and considerable authority exists for the view that the irreparable injury factor is satisfied once the plaintiff demonstrates that the defendant is wrongly trading on the plaintiff's reputation. *Camel Hair & Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 14 (1st Cir.1986) (hereinafter *"Camel Hair"*).

In actions arising out of the Lanham Act, "[t]he heart of this test is the second and third steps, which present the question whether the harm caused plaintiff without the injunction, *in light of* the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants." *Vargas–Figueroa v. Saldana,* 826 F.2d at 162. This, therefore, turns to an examination of the four criteria for a preliminary injunction in the context of the facts of this case, commencing with consideration of the plaintiff's likelihood of success on the merits.

## LIKELIHOOD OF SUCCESS ON THE MERITS

Title 15, Section 1114 of the United States Code provides in pertinent part:

[a]ny person who shall ...

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant.

15 U.S.C. § 1114(1). The basis for an action under this section is the use of a mark in interstate commerce which is likely to cause confusion or to deceive purchasers concerning the origin of the goods or services.[1] *Leather Smith of London, Ltd. v. Alleyn,* 695 F.2d 27, 29 (1st Cir.1982); *Quabaug Rubber Co. v. Fabiano Shoe Co.,* 567 F.2d 154, 160 (1st Cir.1977).

Under the federal trademark laws, "[i]n the preliminary injunction context, a showing of likelihood of confusion as to the source or sponsorship establishes the requisite likelihood of success on the merits as well as the risk of irreparable harm." *Tetley, Inc. v. Topps Chewing Gum, Inc.,* 556 F.Supp. 785, 788 (E.D.N.Y. 1983) (citations omitted). Plaintiff is required to prove the following three elements to succeed in an infringement suit: (1) the ownership of a registered mark entitled to trademark protection; (2) the use of that name in interstate commerce; and (3) its use by another in a manner likely to cause confusion or mistake when compared with the plaintiff's registered mark. *Railroad Salvage of Conn., Inc. v. Railroad Salvage, Inc.,* 561 F.Supp. 1014, 1019 (D.R. I.1983); *see* 15 U.S.C. § 1114. Here, defendant does not challenge plaintiff's contention that its use of the name BAY SHORE is in interstate commerce, but rather argues that the plaintiff has not shown ownership of a protected mark at the relevant time period and the existence of confusion, mistake or deceit. (*See* Docket Entry # 10, pp. 2–4). The court will address each of these arguments separately below.

(a). *Ownership of Protected Mark*

Plaintiff requests this court to enjoin defendant from using the words BAY and SHORE in connection with its business of selling and brokering seafood products, including frozen seafood fillets, in Massachusetts and elsewhere in the United States. (Docket Entry # 6, pp. 1–2).[2]

---

1. The basis for an action under Mass.Gen.L. ch. 110B, § 11 is essentially the same as that under the Lanham Act with the exception of the interstate commerce requirement. *See Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 486 (1st Cir.1981) (comparing Lanham Act with Mass. statute); Mass.Gen.L. ch. 110B, § 11.

2. At the hearing held on September 26, 1990, plaintiff's counsel stated that it is primarily concerned with the use of the words BAY and SHORE in connection with the sale of frozen seafood products, but that "it could live with" the defendant's use of the name BAY SHORE on sauces and soups provided that the defendant uses the name Yankee Specialty Foods on the invoices.

As a preliminary matter, plaintiff alleges that BAYSHORE is a registered mark entitled to protection under the Lanham Act. The U.S. Patent and Trademark Office issued a certificate of registration for the plaintiff's mark, BAYSHORE, on January 26, 1986 and on September 23, 1988 the Massachusetts Trademark Office, issued a similar certificate, four and eight years, respectively, after the defendant incorporated in Massachusetts.

The defendant argues, in defense of the plaintiff's claim under the Lanham Act, that it is entitled to continue using the mark, because it was the first to use the words BAY and SHORE in connection with its line of seafood products in the Massachusetts area, despite the fact that the defendant never registered the mark. The defendant supports its argument by claiming that it incorporated in Massachusetts on November 24, 1982, and that the plaintiff did not incorporate in the Commonwealth until January of 1985.

As a basic hornbook principle of trademark law, it is clear that the plaintiff may not procure a preliminary injunction against the defendant's use of the mark and name under the Lanham Act unless it establishes the exclusive right to the BAYSHORE trademark. "The fact that plaintiff procured registration of its so-called trade-mark does not carry plaintiff over its difficulty because it is elementary that a trade-mark right is not acquired by registration. A right to trade-mark stems from prior appropriation and use." *Tillamook County Creamery Ass'n v. Tillamook Cheese and Dairy Ass'n*, 345 F.2d 158, 160 (9th Cir.1965).

"[T]he portion of the statute [Lanham Act] affording remedies such as are sought here, has limitations. 15 U.S.C. § 1114(1) provides for liability in a civil action of any person using a registered mark in commerce where such use is likely to cause confusion, or to cause mistake, or to deceive." *Value House v. Phillips Mercantile Company*, 523 F.2d 424, 429 (10th Cir. 1975).

In addition, "15 U.S.C.A. § 1115(b) affords a defense if the mark was adopted without knowledge of the registrant's prior use and has been continuously used from a date 'prior to registration or publication of the registered mark ...' the defense being provided only for the area in which such continuous prior use is proved." *Id.* at 430 (citing *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 103–04 (7th Cir.1970); *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842–43 (9th Cir.1969). Title 15, Section 1115(b)(5) of the United States Code makes the prior use defense available "even against a plaintiff whose mark has become uncontestable [under 15 U.S.C. § 1065]." *Id.; see* 15 U.S.C. § 1065 (providing guideline for determination of whether mark is uncontestable). The parties in this action have not raised the issue of whether the mark is uncontestable.

Assuming for the moment that the name BAYSHORE meets the requirements of a valid trademark, it is clear that if the defendant first adopted, used, and acquired BAYSHORE as a trademark and it maintained that use, then the plaintiff's subsequent registration and use could not operate to deprive the defendant of use of the mark and name. *Tillamook County Creamery Ass'n v. Tillamook Cheese and Dairy Ass'n*, 345 F.2d at 161.

Although the history of the use of the BAYSHORE mark is less than crystal clear, it appears from the facts before this court that the plaintiff's predecessors actually designated, appropriated and used the word BAYSHORE in connection with the marketing of its frozen seafood products prior to 1982, when the defendant came into existence. Although the defendant argues that the right to the BAYSHORE name remains with Budd O'Brien and Bay Bulls, it has not shown any relation to Bay Bulls which would lead this court to the conclusion that the defendant or its predecessor, if one existed, appropriated and used the BAYSHORE name and mark prior to use by the plaintiff or its predecessor. The defendant did, however, appropriate and use the trademark prior to the plaintiff's incorporation and registration in Massachusetts.

"The first to use a mark on a product or service in a particular geographic market, the senior user, acquires rights in the mark in that market ... Junior users, who subsequently use the same or similar mark on similar products or services, may also establish common law rights to perhaps even the same market provided there is no competitive overlap with the senior user ... The senior user, however, may enjoin such uses that infringe upon its prior rights." *Tally–Ho, Inc. v. Coast Community College District*, 889 F.2d 1018, 1023 (11th Cir.1989). While a registered mark has prima facie validity, it is subject to another's bona fide use of the same or similar mark under common law. "[A] federal registrant has the right to use the trademark in commerce 'except to the extent that such use infringes what valid right the defendants have acquired by their continuous use of the same mark prior to plaintiff's federal registration.'" *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1395 (3rd Cir.1985) (citations omitted). "[O]nce the certificate has issued, no person can acquire any additional rights superior to those obtained by the federal registrant." *Id.* The plaintiff, as a federal registrant, is still subject to the defense of a prior user of the mark who has established a market in specific areas notwithstanding that senior user's failure to register. "It is this priority in time of trademark use, in commerce, which confers the quintessential right of exclusiveness and hence 'ownership' upon the user." *Modular Cinemas of America, Inc. v. Mini Cinemas Corp.*, 348 F.Supp. 578 (S.D. N.Y.1972).

Accordingly, this court is of the opinion that, in light of the plaintiff's predecessor's prior use of the mark in commerce, and plaintiff's registration of the mark, the plaintiff owns the mark BAYSHORE for use in connection with frozen seafood products. The defendant does, however, have the right to continue using the name and mark to the same extent that it was using the name and mark prior to the plaintiff's registration provided that the defendant can establish, under the common law rules of trademark infringement, that it: (1)

adopted its mark in good faith, meaning without knowledge of prior use by a senior user; and (2) the mark of the senior user was not known to customers in that area. 2 McCarthy, *Trademarks and Unfair Competition* § 26:1 at 286–88 (2d ed. 1984); *see Thrifty Rent–A–Car System, Inc. v. Thrift Cars, Inc.*, 639 F.Supp. at 755 (proof of prior use defense under the Lanham Act allows non-registrant junior user to raise common law defense with respect to area in which it used the contested mark before registration) (citing *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 640 (D.C.Cir. 1982)); *see generally Steak & Brew, Inc. v. Beef & Brew Restaurant, Inc.*, 370 F.Supp. 1030 (1974); *see also generally United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918) (superseded by statute as stated in *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636 (D.C.Cir.1982)); *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916) (superseded by statute as stated in *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636 (D.C.Cir.1982)).

Accordingly, to the extent that the defendant continuously marketed its goods under the name and mark in question in a specific area prior to the registration of the mark by the plaintiff, the defendant may clearly continue that use without the concern of infringing on plaintiff's goodwill invested in the registered name and mark. The defendant's use of that name and mark, as the junior user, is frozen by the plaintiff's registration. *Thrifty Rent–A–Car System, Inc. v. Thrift Cars, Inc.*, 639 F.Supp. at 755–56. The dates of BAYSHORE GROUP LIMITED's federal and state trademark registration, therefore, are critical to the determination of the rights of the parties. *See id.* at 756.

Accordingly, the court concludes that although plaintiff may not prevail on any claim of exclusive right to use the name and mark BAYSHORE against the defendant to the extent that the defendants maintained an innocent, continuous prior use of the name at the time of the plaintiff's registration, this court finds that it is likely to succeed at trial in establishing

ownership of the BAYSHORE mark to the extent that defendant's business has expanded into any area covered by plaintiff's registration at a time subsequent to that registration. Although plaintiff argues that the defendant has expanded its business into areas that infringe upon the plaintiff's ownership of the BAYSHORE name and mark subsequent to registration of the trademark, plaintiff has failed to introduce any conclusive evidence of such an expansion.

### (b). *Likelihood of Confusion*

The key element in any infringement action is the likelihood of confusion. *Purolator, Inc. v. EFRA Distributors, Inc.*, 687 F.2d 554, 559 (1st Cir.1982). Under first circuit case law, this court must look to eight factors in assessing the likelihood of confusion: (1) the similarity of the marks; (2) the similarity of the goods or services; (3) the relationship between the parties' channels of trades; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendants' intent in adopting the mark; and (8) the strength of the mark. *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir.1987) (hereinafter "Volkswagenwerk").

### (i). *Similarity of the Marks*

The similarity of the marks must be considered in light of what occurs in the marketplace and the circumstances of the purchase of the goods. *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir.1980). Both parties in this case use the words BAY and SHORE in their marks. The plaintiff uses the words together in the form BAYSHORE while the defendant maintains their use as two words. Marks less related in appearance and sound have been deemed confusingly similar. *See Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d at 487 (discussing similarity of marks). Many differences exist, however,

in the styles of the script used in the logos. The packaging of the products is also distinguishable. Although it is clear that similarity must be determined on the totality of the circumstances rather than a comparison of the specific attributes of each mark, the court concludes that the differences are not sufficiently distinctive such that they outweigh the vast similarities between the names and marks. *Compare Pignons*, where the court noted that although the word in question was the same in both marks, "the word ... always appears [in use by the defendant] with an equally prominent and uniquely identifying designation." *Id.* at 487. This is not the case here where the prominent words are BAY and SHORE in both names and marks.

### (ii). *Similarity of Goods*

BAY SHORE GROUP LIMITED and BAYSHORE SEAFOOD BROKERS, INC. provide similar, although not identical products. Both are involved in almost exclusively seafood sales. Plaintiff sells frozen seafood fillets while defendant sells soups and chowders under the BAYSHORE label. According to testimony of the defendant, the soups and chowders are invoiced under the name Yankee Specialty Foods although they are packaged with the BAYSHORE label.[3] The defendant also uses the BAYSHORE name in its seafood brokerage business, which includes farm raised products such as trout and catfish as well as imitation crab meat. The brokerage business involves sales to retailers of the products of a third-party customer of the defendant under the third-party's label. The third-party customer and the retailer know the defendant to be operating under the name of BAY SHORE SEAFOOD BROKERS, INC. The ultimate retail customer, however, does not know of the relationship as the BAY SHORE name is not present on the product's label. Although the types of seafood involved in the parties' respective businesses differ, this court

---

**3.** This court further notes at this juncture the representation by the plaintiff at the hearing on this matter that it "could live with" plaintiff's use of the BAY SHORE label on the soups and chowders provided that the defendant does not invoice those products under the BAY SHORE name.

finds that the products all involve some type of seafood, and are therefore considered similar products for the purposes of the motion in question.

(iii). *The Relationship Between the Parties' Channels of Trade*

(iv). *The Relationship Between the Parties' Advertising*

(v). *The Classes of Prospective Purchasers*

 The issues presented by these three factors are closely related, and therefore, this court will examine them together. Plaintiff and defendant do not dispute the fact that they operate in the same or similar channels of trade. With respect to the parties' advertising, both participate in activities such as the Boston Seafood Show and both advertise in several publications. Defendant submits, however, that its customers are sophisticated, and therefore not easily confused. Defendant's customers are wholesalers and distributors in the seafood industry as opposed to the general public. In addition, defendant argues that it deals with its customers, which number less than twenty-five on a weekly basis, on a personal level, and that no potential for confusion exists.

"If the likelihood of confusion exists, it must be based on the confusion of some relevant person, i.e. a customer or purchaser." *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1206 (1st Cir.1983). "Sophisticated consumers" are typically those consumers who would exercise greater care in purchasing the parties' services, and who would be less likely to be confused by the parties' advertising or similarities in services. *Id.* In the case in question, the defendant sells its products and services only to customers involved in the frozen seafood business. It does not sell directly to individual consumers. Thus, while the parties do operate in the same channels of trade, this court does not find, based on the sophistication of the customers, that the relevant classes of consumers would likely be confused by the parties' advertising and distribution of their respective products and services.

(vi). *Evidence of Actual Confusion*

 Plaintiff need not demonstrate actual confusion to prevail on its claim of trademark infringement. *Volkswagenwerk,* 814 F.2d at 818. Such evidence is, however, very persuasive in determining the likelihood of confusion. *McDonald's Corp. v. McBagel's Inc.,* 649 F.Supp. 1268, 1277 (S.D.N.Y.1986). Plaintiff has submitted, in its affidavit, that customers and prospective customers of the plaintiff have inquired about plaintiff's Boston "subsidiary" and further about plaintiff's line of chowders. (Docket Entry # 7, ¶ 29; 30). Plaintiff also submits that at least one trucking company invoiced the plaintiff for services rendered to the defendant. (*Id.* at ¶ 29). "In any event, a single misdirected communication is very weak evidence of consumer confusion." *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d at 490. The incidents raised by plaintiff, without additional evidence of confusion, are insufficient for this court to find actual confusion. Moreover, "absent evidence of actual confusion, when the marks have been in the same market side by side, for a substantial period of time, there is a strong presumption that there is little likelihood of confusion." *Id.* (citations omitted). As discussed above, the defendant has been marketing and brokering its products and services in the New England area since approximately late 1982. Eight years is a substantial amount of time, and the plaintiff's inability to introduce more evidence of actual confusion indicates that the defendant's use of the name and mark BAY SHORE has not resulted in a likelihood of confusion. *Accord, id.* at 490–91.

(vii). *Defendant's Intent in Adopting the Mark*

 "Plaintiff argues that the facts surrounding defendant's use of the BAY SHORE name support the inference that defendant was … [attempting to reap the benefits of] the goodwill associated with plaintiff's BAYSHORE mark." (Docket

Entry # 6, p. 12) (emphasis added). The defendant refutes this argument, claiming that it incorporated in Massachusetts in 1982, almost two years prior to the plaintiff's incorporation and six years prior to registration of the mark by the plaintiff. The defendant further argues that it did not act willfully in an attempt to usurp the goodwill of plaintiff's business. Defendant also submitted that the words BAY and SHORE are widely used in the seafood industry. *See Clairol, Inc. v. Cosmair, Inc.*, 592 F.Supp. 811, 816 (S.D.N.Y.1984) (contention that use of SUMMER SUN as a mark for hair lightener was an attempt to imitate term SUMMER BLONDE without merit in light of wide use of terms SUMMER and SUN in cosmetics industry).

In light of the fact that the parties' marks are not identical and given the wide use of the terms BAY and SHORE in the seafood industry, the court refrains, on the testimony and evidence submitted, from making a finding of bad faith on the part of the defendant.

### (viii). *Strength of Plaintiff's Mark*

Three factors are used to determine the strength of a mark: the length of time it has been in use; the strength of mark in plaintiff's field; and the plaintiff's actions in promoting the mark. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d at 491. Under the Lanham Act, such registration is "prima facie evidence of registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the registration." 15 U.S.C. § 1115(a). This means that at trial the burden of proof will shift from plaintiff, which in a common law infringement action would have to establish its right to exclusive use, to defendants, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such use. *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 (1st Cir.1980). The presumption may be overcome by proof that the registered mark is generic or merely descriptive without secondary meaning. *Liquid Controls*

*Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir.1986).

Here, defendants point to the fact that several other seafood businesses in the Boston area have used the word BAY in their names to dispute the strength of the plaintiff's mark. (Docket Entry # 10, p. 9). It is proper, in determining whether a particular word has a descriptive or suggestive significance in a field, to take notice of the extent to which it has been used in trademarks by others in the same field. *Id.* at 62607.

The defendant did not, however, submit any actual evidence at the hearing or in its memoranda of specific examples of third party usage of the words BAY and SHORE in the names of businesses in the seafood industry. In addition, plaintiff submits that it has spent considerable effort and money on advertising and promoting the BAYSHORE name. Although the plaintiff's mark may not be inherently strong, as the words BAY and SHORE when used in connection with a seafood business do not require much, if any, imagination on the part of the consumer to realize that the enterprise is involved in the seafood business, the factors now before this court, in particular, the existence of the registration of the plaintiff's mark leads this court to the conclusion that, at least for the present purposes, BAYSHORE is a relatively strong mark.

Notwithstanding the strength of the plaintiff's mark, based on a consideration of the above enumerated factors, this court concludes that the plaintiff has not presented sufficient evidence to demonstrate that it is likely to prevail on the merits in establishing a likelihood of confusion due to the defendant's use of the mark BAY SHORE. In light of that conclusion and the absence of evidence indicating that the defendant's business has expanded into areas infringing on the plaintiff's business, this court finds that plaintiff has not established that it is likely to succeed on the merits of its claim under 15 U.S.C. § 1114.[4]

---

**4.** As discussed above, the plaintiff's claim under

Mass.Gen.L. ch. 110B, § 11 requires essentially

The most important factor in that finding is the plaintiff's failure to demonstrate a likelihood of confusion among potential customers.

### B. *Unfair Competition*

■ In Count V of its Verified Complaint (Docket Entry # 1), plaintiff claims that defendant's use of the BAY SHORE name and mark constitutes common law unfair competition. Similar to a claim under the Lanham Act, a claim under that common law theory requires a finding of likelihood of confusion. As discussed above, this court does not find that the plaintiff has demonstrated the existence of a likelihood of confusion among potential consumers. Accordingly, this court does not find that plaintiff is likely to succeed on its claim of common law unfair competition. *See Kazmaier v. Wooten,* 761 F.2d 46, 52 (1st Cir.1985) (discussing claim of unfair competition); *see also United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918) (superseded by statute as stated in *Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636 (D.C.Cir.1982)) (discussing common law unfair competition); *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916) (superseded by statute as stated in *Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636 (D.C.Cir.1982)) (reviewing common law infringement).

### C. *Violation of Mass.Gen.L. ch. 93A, §§ 2 and 11*

The final claim asserted by the plaintiff concerns the violation of Mass.Gen.L. ch. 93A, §§ 2 and 11. In supporting its request for a preliminary injunction under this claim, plaintiff argues that both trademark infringement and unfair competition constitute unfair and deceptive trade practices under this statute. In light of the fact that this court has not found a likelihood of confusion among the potential customers of the parties, this court cannot state that plaintiff is likely to succeed on

the merits of its claim under Mass.Gen.L. ch. 93A, §§ 2 and 11.

### D. *Consideration of Other Factors Necessary to Implement a Preliminary Injunction*

In order to recommend the issuance of a preliminary injunction, this court would have to conclude that plaintiff will suffer irreparable injury if the injunction is not granted; that the injury to the plaintiff outweighs any harm that may result to the defendant if the injunction is granted; that the public interest will not be adversely affected by issuance of the injunction; AND that plaintiff is likely to succeed on the merits.

■ Even turning to the second prong of the standard for implementation of a preliminary injunction and assuming the existence of sufficiently serious questions going to the merits of this dispute, this court is unable to determine that the balance of hardships weighs decidedly in the plaintiff's favor. There is no evidence in the record of actual or imminent injury to the plaintiff's business in terms of loss of revenues or clients as a result of defendant's activities. On the contrary, the evidence suggests that plaintiff's business is thriving. The plaintiff relies on the law in the first circuit which permits the plaintiff to demonstrate irreparable harm in the absence of evidence of actual injury based on the demonstration of a likelihood of success on the merits on a claim of trademark infringement. *Camel Hair & Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.,* 799 F.2d at 14. Plaintiff, in this case has failed, however, to establish either a likelihood of success on the merits or the existence of actual injury to its reputation or business. In contradistinction, the defendant has asserted that it will be harmed if the injunction does issue, because it will be unable to operate under its incorporated name upon which it has spent almost eight years building a strong

---

the same findings as the claim under the Lanham Act in order for this court to determine that plaintiff will likely succeed on the merits of its claim. Accordingly, this court concludes

that plaintiff has also not presented sufficient evidence to demonstrate that it is likely to succeed on a claim under that statute.

reputation. In addition, the public interest in this case does not support the imposition of a preliminary injunction where the plaintiff has not exhibited a likelihood of success on the merits, and where the relevant customer is not the general public, but is a wholesaler, distributor or a member of the restaurant industry. In light of this court's finding that the plaintiff has not demonstrated a likelihood of success on the merits of its claims, it is not necessary for this court to reach consideration of the remaining three criteria under the standard for issuance of a preliminary injunction.

## IV. RECOMMENDED RELIEF

Plaintiff requests that the court "enter a preliminary injunction ... that defendant, its officers, employees, and other agents shall refrain from manufacturing, selling or brokering seafood products under the name BAY SHORE or any other name confusingly similar to plaintiff's registered BAYSHORE trademark." (Docket Entry # 1, ¶ 42(1)). After examining the criteria necessary for the issuance of a preliminary injunction, and in particular, because this court has not found that plaintiff has satisfactorily demonstrated a likelihood of success on the merits based on the failure to demonstrate a likelihood of confusion among the relevant customers, this court RECOMMENDS[5] that plaintiff's request be DENIED.

---

5. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation and must identify the portion of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).